Gilbert EVANS *v.* STATE of Arkansas

CA CR 90-180                                    804 S.W.2d 730

Court of Appeals of Arkansas
Opinion delivered February 27, 1991.

*Wilson, Engstrom, Corum and Dudley*, by: *William R. Wilson Jr.* and *Timothy O. Dudley*, for appellant.

*Steve Clark*, Att'y Gen., by: *Sandra Bailey Moll*, Asst. Att'y Gen., for appellee.

GEORGE K. CRACRAFT, Chief Judge. Gilbert Evans appeals from his conviction of the crimes of manufacture of a controlled

substance and possession of drug paraphernalia, for which imposition of sentence was suspended for five years. Prior to the date set for trial, appellant filed a motion to suppress all evidence of contraband as the fruits of an illegal, warrantless search in violation of his rights under the fourth amendment to the United States Constitution. When his motion to suppress was denied, he entered a plea of *nolo contendere*, reserving his right to appeal from the adverse ruling on the motion to suppress, as provided in Ark. R. Crim. P. 24.3(b). On appeal, appellant contends that the trial court erred in denying his motion to suppress. We agree and reverse and remand.

The record indicates that, on the afternoon of April 20, 1989, the North Little Rock Police Department received a telephone call from a person identifying herself as Irene Smith, who stated that her daughter was being held at gunpoint in an apartment located at 1600 North Main Street. She advised that she had received this information from her son and furnished a telephone number where she could be reached. After communicating the report to a patrol unit, the dispatcher called Ms. Smith in an attempt to obtain more information regarding the location of the apartment and told her that no one was found at 1600 North Main. Ms. Smith informed him that the residence was a duplex across the street from the social security office and an antique shop and repeated that the address was 1600 North Main.

According to the tape recording of the dispatch, the following conversation occurred between two police officers who had arrived at the scene.

Police (221): Would it be that one on the right over there you think or this one on the left?

Police #2: *Probably on the left.*

Police (221): I'm going to check this one *on the right* over here in front.

Police #2: Ok. *I'll take 1600 here on the left.*

The officer who entered 1600 North Main advised that there was a man named John in an apartment there, apparently the name given to the police by Ms. Smith as the name of the man holding her daughter at gunpoint, but determined that no crime had

occurred there. At the same time, the other officer, Gary Canady, entered a dwelling at 1516 North Main, and reported:

> Police (221): 10-4. I got this uh, door open. It's not locked. It's open. I opened it up and nobody will answer inside. I'm gonna step inside and check.
>
> Dispatch: 221 — have you located her?
>
> Police (221): I'm checking this house. I've found quite a few marijuana plants in here.

After Officer Canady walked through the residence at 1516 North Main, he and the other officers involved gathered outside behind the house. Having observed the commotion from his neighboring office, appellant went next door to find out what was going on. In response to the officer's inquiry, appellant told them that he was the owner of the house. Officer Canady testified that he showed appellant the marijuana plants that could be·viewed through the back porch window. He further testified that appellant told him that "the marijuana is mine." Another officer testified that appellant was advised that he could either consent to a search or "we could go get a search warrant." The record indicates that, at the time appellant consented to the search of his residence, he was in custody and in the presence of five uniformed officers. That search disclosed bags of marijuana, paraphernalia, and marijuana seeds, in addition to the marijuana plants, all of which were seized.

When reviewing a trial court's ruling on a motion to suppress, this court makes an independent determination based on the totality of the circumstances. We give great weight to the findings of the trial court in the resolution of evidentiary conflicts and defer to its superior position in passing upon the credibility of the witnesses. The decision of the trial court will not be reversed unless clearly erroneous. *Campbell* v. *State*, 27 Ark. App. 82, 766 S.W.2d 940 (1989); *Shamlin* v. *State*, 23 Ark. App. 39, 743 S.W.2d 1 (1988).

We first address the initial entry by the police officer into appellant's residence and conclude that it was in violation of the constitutional guarantees against unreasonable search and seizure. It is axiomatic that the physical entry into one's home is the chief evil against which the fourth amendment is directed,

and that all searches and seizures inside a home are presumptively unreasonable. The principal protection afforded by that amendment against unreasonable intrusion into the home is the requirement that a warrant be first obtained by one who enters a home for the purpose of search or seizure. *Welsh* v. *Wisconsin*, 466 U.S. 740 (1984); *Payton* v. *New York*, 445 U.S. 573 (1980). Consistent with these established principles, our courts have held that all warrantless entries into the home are prohibited by the fourth amendment, unless at the time of entry there exists probable cause and exigent circumstances. *Payton* v. *New York*, *supra*; *Mitchell* v. *State*, 294 Ark. 264, 742 S.W.2d 895 (1988).

■■ "Probable cause" means more than bare suspicion. It exists where the facts and circumstances within the knowledge of the police officers, and of which they collectively have reasonably trustworthy information, are sufficient in themselves to warrant men of reasonable caution in the belief that an offense has been or is being committed. *Mitchell* v. *State*, *supra*; *Burks* v. *State*, 293 Ark. 374, 738 S.W.2d 399 (1987). In determining the existence of probable cause, our courts have adopted a totality of the circumstances test. *Mitchell* v. *State*, *supra*.

When we apply these principles, we must conclude that at the time the police officer made the initial entry into appellant's dwelling he did not have probable cause to believe a felony had been or was being committed there. The basis for the officer's intrusion was a telephone call from a person identifying herself as Irene Smith, informing the police that her son had informed her by telephone that her daughter was being held at gunpoint in an apartment at 1600 North Main. The officers dispatched to the scene apparently were uncertain that 1600 North Main was the place to which the caller intended to direct them. The dispatcher called Ms. Smith and she verified 1600 as the proper address.

Officer Canady testified at the hearing as follows:

Q. Tell this Court what was told to you by the dispatch operator and what information you were acting on?

A. I received a call, and at the time I didn't know if it was a black male or white male, holding a female at gunpoint in a duplex in the 1600 block of Main Street. I and Officer Bryant, my partner, and Officer Crutchfield proceeded to

the area and in the 1500 block of Main Street there was a white house that looked like a duplex, and in the 1600 block was — Officer Bryant was to check the house in the 1600 block. I and Officer Crutchfield checked the house in the 1500 block.

Q. What information were you receiving about the location of this house other than the street address?

A. It was just a white house duplex in the 1500 or 1600 block of Main Street.

On cross-examination, the officer testified:

Q. Did they direct you to 1500 or 1600 Main Street?

A. Yes, sir. In the 1600 block, and a white duplex.

Officer Canady had no information indicating that a felony had been or was being committed at 1516 North Main and obtained no independent verification of that at the scene. Nor is it clear where appellant's house was located with reference to the social security building or the antique shop. On the other hand, it is clear that 1600 North Main is, in fact, across the street from an antique shop, which is at 1601 North Main, and across the street, catercornered, from the social security building. It is also clear that the officers did not know which house they were looking for and were making a random search of the immediate area. Furthermore, we find nothing in the record to verify the officers' statement that he had been informed that the dwelling in which the hostage allegedly was being held was white.

We agree with appellant that this case is controlled by the decision in *Mitchell* v. *State, supra.* In that case, the police received an anonymous telephone call that a person had been shot and killed at 3408 Short Wilma. An officer investigated and found no such address on Short Wilma. He then went to nearby Wilma Street, which did have a residence numbered "3408." The officer found the door unlocked and entered it. He discovered a body and other evidence connecting appellant to the crime of murder. The supreme court held that as the identity of the caller was anonymous, one could only speculate as to the reliability of the information, and that an unverified, anonymous telephone call could not provide probable cause.

The state argues that *Mitchell* is distinguishable because there the court emphasized that the call received by the police was "anonymous," while here the caller identified herself and gave a telephone number at which she could be reached. We find no substance in this distinction.

■ It is apparent from the cases cited in *Mitchell* that the court did not rely merely on the fact that the party did not identify himself. Its conclusion was based on the fact that the police had no way of verifying the trustworthiness of the information communicated to them by the unknown caller. The mere fact that Irene Smith identified herself in no way established her trustworthiness. Moreover, there is nothing in the record regarding the trustworthiness or even the name of Ms. Smith's son, the informant who gave her the information that she relayed to the police. In determining probable cause, the pivotal question is reliability of the information on which the officers rely. The record does not show that either Irene Smith or her son were known to the police officers or known by them to be trustworthy.

In *Burks* v. *State, supra,* and *Conor* v. *State,* 260 Ark. 172, 538 S.W.2d 304 (1976), an anonymous telephone call was insufficient to establish probable cause, because trustworthiness of the information was not established. In *Conor,* the court said:

> The pivotal question, however, is the reliability of the information upon which the officers acted. The identity of the anonymous caller remains unknown. In contrasting such an informant with one who discloses his identity the Supreme Court has said: "The informant was known to [the officer] personally and had provided him with information in the past. This is a stronger case than obtains in the case of an anonymous telephone tip." [Citation omitted.]

260 Ark. at 174, 538 S.W.2d at 305.

The basis for discounting the telephone call in *Mitchell* applies equally here, as there is nothing in this record to show that anyone knew who Ms. Smith's son was or that he was a trustworthy informant. Neither Ms. Smith's telephone call nor the officers' entry into a dwelling other than the one specified by Ms. Smith supports or contributes to a probable cause

determination.

■■ Appellant also argues that his consent to the subsequent search of his residence was invalid. We agree. The analysis in this case is two-fold: (1) whether appellant's consent was a fruit of the prior illegal search under *Wong Sun* v. *United States*, 371 U.S. 471 (1963); and (2) whether his consent was "voluntary". First, the "fruit of the poisonous tree" doctrine provides that evidence obtained by the exploitation of a primary illegality must be excluded. *Wong Sun, supra.* On the facts of this case, we conclude that appellant's consent to search his residence and the evidence discovered as a result of that search were fruits of the initial illegal intrusion by the officers. The officers asked appellant if they could search his house only after they had illegally entered the dwelling and observed marijuana plants and drug paraphernalia.

■ We disagree with the State's alternative argument that the evidence of the crime was in plain view. Rule 14.4 of the Arkansas Rules of Criminal Procedure provides that an officer, during the course of an otherwise lawful activity, may seize such things that he reasonably believes to be subject to seizure. The fact that the officers' initial intrusion was unlawful takes the evidence seized outside the plain view exception. *See Johnson* v. *State*, 291 Ark. 260, 724 S.W.2d 160 (1987).

With regard to the second part of the analysis, the burden rests upon the State to prove that consent to a search was voluntary and not the product of duress or coercion. *Schneckloth* v. *Bustamonte*, 412 U.S. 218 (1973); *Alford* v. *Smith*, 291 Ark. 243, 724 S.W.2d 151 (1987). On appeal, this court makes an independent determination, considering that totality of the circumstances, as to whether the State has met that burden. *Guzman* v. *State*, 283 Ark. 112, 672 S.W.2d 656 (1984); *Smith* v. *State*, 265 Ark. 104, 576 S.W.2d 957 (1979); *Shamlin* v. *State*, *supra.*

■ From our review of the totality of the circumstances, we cannot conclude that appellant's consent was freely and voluntarily given and not the product of duress or coercion. In *Bumper* v. *North Carolina*, 391 U.S. 534 (1968), the Supreme Court held that mere acquiesence to a claim of lawful authority is not consent. Conduct that is questionable or clearly indicates

mere acquiesence to perceived police authority will not support a search based on the party's alleged consent, regardless of the lack of coercion. *Id.*; *Alford* v. *State, supra.* Here, at the time appellant's consent was obtained, he was confronted with the incriminating evidence and was told by the officers that, if he did not consent to the search, they could go get a search warrant. Although we decline to go so far as to say that either factor is coercive per se, we think that they are factors to be considered as part of the totality of the circumstances test.

In *Holloway* v. *Wolff,* 482 F.2d 110 (8th Cir. 1973), the consent to search the appellant's residence was obtained after a search had been carried out pursuant to an invalid warrant. The appellant was "face to face with the incriminating evidence and able to see that the police had firm control over her home." 482 F.2d at 115. The court, citing *Bumper* v. *North Carolina, supra,* held that the appellant's alleged consent constituted nothing more than acquiesence to a claim of lawful authority and, therefore, that the consent was invalid.

In *United States* v. *Boukater,* 409 F.2d 537 (5th Cir. 1969), the court considered the issue of whether a consent to a search was voluntary. The court recognized that, where an accused is in custody and an officer implies that he might as well consent because a warrant could be quickly obtained if he refused, the consent could be found to be involuntary. In *Bumper* v. *North Carolina, supra,* the court found coercion present when the officers falsely claimed to have a search warrant. While that is not the case here, it has been held that the intimidation that a warrant will automatically issue, as though it is merely ministerial, is as inherently coercive as the announcement of an invalid warrant. *See Dotson* v. *Somers,* 175 Conn. 614, 402 A.2d 790 (1978); *See also* 3 LaFave, *Search and Seizure,* § 8.2(c) (2d ed. 1987).

Based on both a fruit-of-the-poisonous-tree analysis and a voluntariness analysis, we conclude that appellant's consent to search his residence was invalid. From our review of the totality of the circumstances, we conclude that the trial court erred in denying appellant's motion to suppress.

Reversed and remanded.

MAYFIELD, J., concurs.

COOPER, J., dissents.

JAMES R. COOPER, Judge, dissenting. I dissent from the majority's holding that the entry of the appellant's residence was unlawful. An entry is lawful where there are both exigent circumstances and probable cause. *Sanders* v. *State*, 262 Ark. 595, 559 S.W.2d 704 (1977). There is no doubt that the reported armed hostage situation in the case at bar provided the requisite exigent circumstances to support the entry. The only question remaining to me is whether the search was based on probable cause.

Relying on *Mitchell* v. *State*, 294 Ark. 264, 742 S.W.2d 895 (1988), the majority concludes that probable cause to search the appellant's residence was not present. I disagree. In *Mitchell*, the police received an anonymous phone call informing them that there was a person who had been dead for some time in a house. The case at bar is clearly distinguishable: Here, the police were responding to a report from an identified caller who informed them that her daughter was being held at gunpoint. The element of immediacy which, as the *Mitchell* Court noted, is absent where there is no reason to believe that the victim might still be alive, was present in the case at bar. Moreover, the caller in the present case identified herself and her relation to the victim. Although the majority places this caller in the same category as an anonymous tipster, I submit that the willingness of a person to identify herself is a significant factor in determining trustworthiness; likewise, the fact that the caller in the case at bar telephoned the police reflects on her confidence in the information relayed to her by her son. Finally, I submit that the officer's uncertainty concerning the address of the residence to be searched is not fatal to a finding of probable cause. The evidence in support of probable cause is not be analyzed on the basis of rigid rules, but should instead be viewed from the standpoint of experienced law enforcement officers. *Mitchell, supra.* The determination does not deal with hard certainties, but instead with probabilities in the context of particular factual contexts. *Id.* I submit that the search in the case at bar, when viewed in light of the above factors, was supported by probable cause. I respectfully dissent.