Julio BERNAL *v.* STATE of Arkansas

CA CR 93-1378                                  892 S.W.2d 537

Court of Appeals of Arkansas
Division II
Opinion delivered February 22, 1995

176

*Robert A. Newcomb*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Clint Miller*, Acting Deputy Att'y Gen., for appellee.

JAMES R. COOPER, Judge. The appellant was convicted in a jury trial of possession of marijuana with intent to deliver and sentenced to six years in the Arkansas Department of Correction. On appeal, he argues that his motions to suppress should have been granted because he was detained in violation of his rights under the Fourth Amendment to the United States Constitution and because he was not advised of his *Miranda* rights prior to making a statement to the police. We affirm.

At the suppression hearing, Robert Wortham, a narcotics detective for the City of Little Rock, testified that on September

14, 1992, he was monitoring passenger activity at the bus station in North Little Rock for narcotics trafficking. He testified that he used his narcotics detecting dog to search a bus that arrived at 9:00 a.m. from Dallas. He stated that the dog indicated that two suitcases on the bus, one blue and one black, contained narcotics. He testified that there was no identification on the exterior of either bag and that he and Agent Boyce, a DEA officer, identified themselves to the passengers and attempted to ascertain the owners of the suitcases. When the officers were not able to identify the owners, the driver of the bus asked the passengers to exit the bus with their luggage. Detective Wortham and Agent Boyce re-entered the bus and found the two bags remaining on the bus. Detective Wortham opened the blue bag and found seven bundles of green vegetable material later determined to be marijuana. He discovered two more large bundles of marijuana in the black bag. He testified that he then exited the bus with the bags, entered the bus station, and observed Border Patrol Agent Graham speaking with the appellant.

Randy Graham, a United States Border Patrol Agent, testified that he witnessed the appellant and Mr. Benito Salinas, the appellant's codefendant, exit the bus that arrived from Dallas. He stated that he noticed the appellant and Mr. Salinas intently watching Detective Wortham work the bus with the narcotics dog. He testified that Detective Wortham exited the bus and informed him that he had found a "hot bag," meaning one identified as containing narcotics. Agent Graham stated that he then observed the appellant and Mr. Salinas leave the bus terminal, walk down the street, have a discussion, and return to the bus station. Agent Graham subsequently approached the appellant and identified himself. He spoke to the appellant in Spanish and asked to see the appellant's bus ticket. The appellant informed him that he did not have one. He then asked the appellant for his identification and was given an alien identification card. Agent Graham testified that he noticed two small keys in the appellant's wallet when the appellant removed his identification card. He stated that he asked the appellant what the keys were to and the appellant responded they were to his suitcase on the bus. He stated that Officer Wortham then walked through the terminal carrying the blue and black suitcases containing marijuana and that the appellant identified the black suitcase as belonging to him.

He stated that the appellant identified the other suitcase as belonging to Mr. Salinas. Agent Graham then read the appellant his *Miranda* rights and placed him under arrest. He testified that the set of keys in the appellant's possession opened the black suitcase. He further testified that the appellant was free to leave and that he made no attempt to restrain him until the appellant indicated that he owned one of the bags containing marijuana.

The appellant testified that he was attempting to purchase coffee after exiting the bus when an officer approached him and told him to place his hands on the wall. He stated that the officer asked him for his wallet and he told the officer that he wanted an attorney. He testified that the officer then took his wallet from him and took his identification card out of his wallet. The appellant stated that when he was allowed to turn around, the officer shoved some keys at him which did not belong to him. The appellant also testified that he did not have a suitcase.

Benito Salinas testified that when he exited the bus, Officer Wortham spoke to him and took his bus ticket. He stated that the officer asked if he had a suitcase and he responded that he did not have any luggage. Mr. Salinas testified that the officers never grabbed or touched him, although the officers did grab the appellant. He further testified that the officers threatened to take away their green cards if they did not talk to or cooperate with them.

The appellant first argues that his motions to suppress should have been granted because he was detained in violation of the Fourth Amendment. The evidence the appellant sought to suppress consisted essentially of the black suitcase containing marijuana and his statement to Agent Graham in which he admitted ownership of the black suitcase.

■ In reviewing a trial judge's decision on a motion to suppress, this Court makes an independent determination based on the totality of the circumstances, and we reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Ward* v. *State*, 308 Ark. 415, 827 S.W.2d 110, *cert. denied* 113 S.Ct. 124 (1992). A motion to suppress evidence should be granted only if the Fourth Amendment violation was substantial. Ark. R. Crim. P. 16.2(e).

■ We first note that the appellant testified at the suppression hearing that he did not have a suitcase. The protection of the Fourth Amendment guarantees the right of people to be secure against unreasonable searches and seizures. The rights secured by the Fourth Amendment are personal in nature. *Rakas* v. *Illinois*, 439 U.S. 128 (1978). Thus, a defendant must have standing before he can challenge a search on Fourth Amendment grounds. *Id.; Littlepage* v. *State*, 314 Ark. 361, 863 S.W.2d 276 (1993). A defendant's right to challenge a search and seizure as being violative of the Fourth Amendment is based upon the existence of a legitimate expectation of privacy. *Rabun* v. *State*, 36 Ark. App. 237, 821 S.W.2d 62 (1991). In *Rakas, supra*, the Supreme Court made it clear that a defendant can have a reasonable expectation of privacy in the area searched, or object seized, if he can show a possessory interest therein. *See State* v. *Villines*, 304 Ark. 128, 801 S.W.2d 29 (1990).

■ Here, the appellant denied ownership or possession of the suitcase. Thus, he failed to establish that he had an expectation of privacy in the suitcase and had no standing to challenge the search and seizure of it on Fourth Amendment grounds. Moreover, when one abandons an article, he abandons any right under the Fourth Amendment. *See Edwards* v. *State*, 300 Ark. 4, 775 S.W.2d 900 (1989); *Wilson* v. *State*, 297 Ark. 568, 765 S.W.2d 1 (1989).

■ We also find that the appellant's statement to Agent Graham was not a product of an illegal detention. Not all personal intercourse between policemen and citizens involve "seizures" of persons under the Fourth Amendment. *Thompson* v. *State*, 303 Ark. 407, 797 S.W.2d 450 (1990); *Rabun* v. *State, supra*. A person has been seized within the meaning of the Fourth Amendment only if, in view of all circumstances surrounding the incident, a reasonable person would have believed he was not free to leave. *United States* v. *Mendenhall*, 446 U.S. 544 (1980). If there is no detention — no seizure within the meaning of the Fourth Amendment — then no constitutional rights have been infringed. *Florida* v. *Royer*, 460 U.S. 491 (1983); *Rabun* v. *State, supra.*

Arkansas Rule of Criminal Procedure 2.2(a) authorizes a police officer to request a person to furnish information by answer-

ing questions regarding the investigation of a crime. The appellant relies on *Meadows* v. *State*, 269 Ark. 380, 602 S.W.2d 636 (1980), in which the court found Rule 2.2 inapplicable to the facts where police officers detained persons who acted suspiciously. However, *Meadows* can be distinguished from the case at bar in that the officers in *Meadows* were not requesting information in the course of a criminal investigation.

■■ Here, Agent Graham testified that he had been alerted by Officer Wortham that narcotics had been found on the bus. Agent Graham stated that he spoke to the appellant in the bus terminal, a public place. He testified that the appellant agreed to speak to him and that he made no attempt to restrain the appellant in any way. The appellant and Mr. Salinas testified that the officers detained and threatened them; however, conflicts in testimony are for the trial judge to resolve, and the judge is not required to believe any witness's testimony, especially the testimony of the accused since he is the person most interested in the outcome of the proceedings. *Ross* v. *State*, 300 Ark. 369, 779 S.W.2d 161 (1989). Under the facts in the case at bar, we cannot conclude that this was a "seizure" within the meaning of the Fourth Amendment.

■■ The appellant next argues that his statement to Agent Graham should have been suppressed because the officer did not advise him of his *Miranda* rights prior to questioning him. However, the *Miranda* warning is not required unless the statement is a result of a custodial interrogation. *Ward* v. *State, supra. Miranda* warnings are not required if the questioning by police is simply investigatory. *Cook* v. *State*, 37 Ark. App. 27, 823 S.W.2d 916 (1992). To determine whether or not one has been subjected to custodial interrogation so as to require the giving of *Miranda* warnings, our Supreme Court in *Shelton* v. *State*, 287 Ark. 322, 699 S.W.2d 728 (1985), set forth the following test:

> It is settled that the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest. A policeman's unarticulated plan has no bearing on the question whether a suspect was 'in custody' at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.

287 Ark. at 328-29, 699 S.W.2d at 731 (quoting *Berkemer* v. *McCarty,* 468 U.S. 420 (1984)).

 We do not think the circumstances here are such that the appellant would have been justified in the belief that he was in custody and thus, we cannot find that the statement was a product of a custodial interrogation so as to warrant its exclusion.

Affirmed.

JENNINGS, C.J., and PITTMAN, J., agree.