Carlos BURDYSHAW *v.* STATE of Arkansas

CA CR 99-685                                         10 S.W.3d 918

Court of Appeals of Arkansas
Division II
Opinion delivered March 1, 2000

*The Blagg Law Firm*, by: *Ralph J. Blagg* and *Brad A. Cazort*, for appellant.

*Mark Pryor*, Att'y Gen., by: *James R. Gowen, Jr.*, Ass't Att'y Gen., for appellee.

MARGARET MEADS, Judge. Appellant, Carlos Burdyshaw, was convicted by a Craighead County jury of possession of a controlled substance, methamphetamine, with intent to deliver; possession of a controlled substance, marijuana; possession of drug

paraphernalia with intent to use; and simultaneous possession of drugs and a firearm. He was sentenced to a total of thirty-three years in the Arkansas Department of Correction and fined $31,000. Appellant argues two points on appeal: (1) the trial court erred in refusing to suppress evidence obtained in a search; and (2) the trial court erred in holding that the consent given to search the property was valid. We affirm.

On July 21, 1998, Deputy Bobby Johnson of the Craighead County Sheriff's Department received an anonymous telephone call informing him that appellant was operating a methamphetamine lab at his house in Bono, Arkansas, and had some methamphetamine in his possession. At approximately 7:45 that night, Deputy Johnson and several other law enforcement officers went to appellant's house. When they arrived, appellant and two other men were standing outside a shop building. Deputy Johnson approached appellant, told him that he had received an anonymous tip that appellant was operating a methamphetamine lab, and asked if he could conduct a search. Appellant verbally consented to the search. Then Deputy Johnson asked appellant if he owned the property, and appellant informed him that his father, Ralph Burdyshaw, owned the property. At that point, Deputy Johnson instructed Officer Mark Smith to obtain consent from Ralph Burdyshaw. Officer Smith approached Ralph Burdyshaw, who was sitting in a chair in the carport, and obtained his written consent to search the residence, the shop building, and all surrounding areas. Guns, drug paraphernalia, methamphetamine, and marijuana were found in the residence as a result of the search, and appellant was arrested at that time.

█ Appellant first contends that the trial court erred in refusing to grant his motion to suppress the evidence obtained in the search because the officers had no probable cause to enter upon the property. When reviewing a trial court's ruling on a motion to suppress, the appellate court makes an independent determination based upon the totality of the circumstances and reverses only if the ruling is clearly erroneous or against the preponderance of the evidence; in making this determination, the evidence is viewed in the light most favorable to the appellee. *State v. Rufus*, 338 Ark. 305, 993 S.W.2d 490 (1999).

■ Appellant's argument asserts a violation of his Fourth Amendment right to be free from unreasonable searches and seizures. The touchstone of Fourth Amendment analysis is whether a person has a constitutionally protected, reasonable expectation of privacy. *Freeman v. State,* 37 Ark. App. 81, 824 S.W.2d 403 (1992) (citing *Oliver v. United States,* 466 U.S. 170 (1984)). The Fourth Amendment does not protect the merely subjective expectation of privacy, but only those expectations that society is prepared to recognize as reasonable. *Id.*

In support of his argument, appellant cites *Evans v. State,* 33 Ark. App. 184, 804 S.W.2d 730 (1991), which he contends is analogous to the case at bar. We believe that *Evans* is clearly distinguishable. In *Evans,* an officer entered a house based upon an anonymous tip and found marijuana plants before he had obtained consent to search the property. When the owner arrived, the officer told him that either he could consent to the search or the officer would obtain a search warrant; the owner then consented to the search. In reversing the trial court's denial of the motion to suppress, this court held that at the time the officer entered into the residence he did not have reasonable cause to do so, and he did not have the owner's consent to search the residence. In the case at bar, the officers traveled to the Burdyshaw residence based upon an anonymous tip, but did not enter the residence or conduct any search of the premises until they obtained written consent to do so from the owner of the property, Ralph Burdyshaw.

■ Appellant contends that the officers should not have entered the driveway to the property because they lacked probable cause to do so. However, the expectation of privacy in driveways and walkways, which are commonly used by visitors to approach dwellings, is not generally considered reasonable. *Freeman, supra.* Nevertheless, the question of whether a driveway is protected from entry by police officers depends on the circumstances, with reference to such factors as accessibility and visibility from a public highway. *Freeman, supra* (citing *United States v. Smith,* 783 F.2d 648 (6th Cir. 1986)).

In the present case, Deputy Johnson testified that the Burdyshaws' driveway was long and narrow, and although the house was perhaps seven hundred feet from the road, it was visible from the county road. Appellant's mother, Terisita Burdyshaw, tes-

tified at the suppression hearing that their property was posted with "no trespassing" signs and that three gates along the driveway were usually open.

■ We believe the rationale of *United States v. Ventling*, 678 F.2d 63 (8th Cir. 1982), is applicable to the case at bar. In that case, Ventling was convicted of two counts of interfering with the use of a U. S. Forest Service Road for erecting several large boulders as roadblocks. When a Forest Service agent investigated, he observed tractor tire tracks between the boulders leading to Ventling's driveway. The agent drove up the driveway and approached the home, where he noticed more tire tracks and a tractor equipped with a backhoe and a front-end loader. Although he was denied permission to inspect the tractor tires and was told to leave the premises, the agent took photographs of the tire tracks before he left and obtained a search warrant based upon the observations he made while on Ventling's property. Ventling moved to have the evidence suppressed on the basis that he had a reasonable expectation of privacy in his driveway and the area around his house and because he had "No Trespassing" signs on his driveway. In denying the motion to suppress, the trial court held:

> The absence of a closed or blocked gate in this country creates an invitation to the public that a person can lawfully enter along the driveway during daylight hours to contact the occupants for a lawful request and if the request is refused to leave by the same way. The presence of "no trespassing" signs in this country without a locked or closed gate make the entry along the driveway for the purposes above described not a trespass and therefore does not constitute an intrusion prohibited by the Fourth Amendment.

678 F.2d at 66.

■ The district court agreed with the trial court's analysis and affirmed the denial of the motion to suppress, stating that the extension of appellant's expectation of privacy to the driveway did not appear to be reasonable. Applying the rationale set forth in *Ventling* to the facts of this case, even though the property was posted, the gates were open, the driveway was not blocked, and entry onto the property was not an intrusion prohibited by the Fourth Amendment.

Furthermore, in *Oregon v. Corbett*, 516 P.2d 487, 490 (1973), the Court of Appeals of Oregon stated:

> In the course of urban life, we have come to expect various members of the public to enter upon such a driveway, e.g., brush salesmen, newspaper boys, postmen, Girl Scout cookie sellers, distressed motorists, neighbors, friends.... If one has a reasonable expectation that various members of society may enter the property in their personal or business pursuits, he should find it equally likely that the police will do so.

■ We hold that the police officers did not violate appellant's Fourth Amendment right to be free from unreasonable searches and seizures by merely driving up the driveway to the house and requesting consent to search the premises. The officers were not required to have reasonable cause to enter the driveway and approach the residence in order to request consent to search. Unlike the facts in *Evans, supra*, the officers performed no search until they received written consent to do so from the owner of the premises. The trial court did not err in denying appellant's motion to suppress the evidence found in the house.

Appellant's second argument is intertwined with his first argument. He argues that because the officers did not have probable cause to enter his father's property based upon an anonymous tip, his father's consent to search the property was invalid as fruit of the poisonous tree. We disagree with this contention in light of our disposition of appellant's first point on appeal. Moreover, we believe that Ralph Burdyshaw's consent was properly obtained.

■ Rule 11.1 of the Rules of Criminal Procedure provides, "An officer may conduct searches and make seizures without a search warrant or other color of authority if consent is given to the search or seizure." Consent to a warrantless search of one's home must be given freely and voluntarily, and it is the State's burden to prove by clear and positive evidence that consent was freely and voluntarily given. *Humphrey v. State*, 327 Ark. 753, 940 S.W.2d 860 (1997). On appeal, the appellate court makes an independent determination based on the totality of the circumstances to determine if the State has met its burden. *Id.*

At oral argument, appellant's counsel asserted that *Norris v. State*, 338 Ark. 397, 993 S.W.2d 918 (1999), established a bright-

line rule that a warrantless entry into a home is prohibited absent exigent circumstances, even if consent is obtained. We do not agree. In *Norris*, the issue on appeal was the extent of the consent given. In that case, our supreme court determined that the person who answered the door asked the officer to step inside merely because the family dog was barking; that this initial consent was limited to the officer's entry into the front door; and that the officer's attempt to enter further into the house in reliance on the initial consent exceeded that consent.

█ In this case, the officers obtained written consent from appellant's father, Ralph Burdyshaw, before commencing any search. The search form that Mr. Burdyshaw executed stated that he had been informed of his constitutional right not to permit a search without a search warrant, and that he willingly gave his permission to conduct a complete search of his premises and property. Moreover, Deputy Johnson testified that Mr. Burdyshaw told him he didn't have anything to hide and his boy shouldn't have anything to hide either, and that we could take a look around. We believe that with this evidence, the State established that Mr. Burdyshaw freely and voluntarily gave his written consent to search his property.

Affirmed.

JENNINGS and BIRD, JJ., agree.