William HADL v. STATE of Arkansas

CA CR 00-903 47 S.W.3d 897

Court of Appeals of Arkansas
Division I
Opinion delivered June 6, 2001

*Terry Goodwin Jones,* for appellant.

*Mark Pryor,* Att'y Gen., by: *Jeffrey A. Weber,* Ass't Att'y Gen., for appellee.

SAM BIRD, Judge. William Hadl was charged by felony information with attempting to manufacture methamphetamine, possessing drug paraphernalia with intent to use, and possessing drug paraphernalia with intent to manufacture methamphetamine. He filed a pretrial motion to suppress evidence of items that police officers seized in a warrantless search of his home and the surrounding premises. The trial court denied the motion after conducting a suppression hearing, and the case proceeded to a jury trial. At trial Hadl renewed his motion to suppress, and it was again denied. At the close of all the evidence the trial court granted a motion for a directed verdict on the charge of attempting to manufacture methamphetamine. The remaining counts were submitted to the jury.

Hadl was convicted of possessing drug paraphernalia with intent to use, for which he was sentenced to ten years' probation, and of possessing drug paraphernalia with intent to manufacture methamphetamine, for which he was sentenced to six years' imprisonment in the Arkansas Department of Correction and assessed a fine of $100. On appeal he raises two points: (1) that the trial court erred in refusing to suppress evidence because it was obtained by

the police tactic of "knock and talk," and (2) that the trial court erred in refusing to suppress evidence that had been seized by police during the search but that the prosecuting attorney was unable to make available for examination by appellant. We affirm.

*Whether the trial court erred*
*in refusing to suppress evidence obtained by*
*the police tactic of "knock and talk"*

■ ■ In reviewing a trial court's denial of a motion to suppress, the appellate court makes an independent examination based on the totality of the circumstances and will reverse only if the ruling was clearly against the preponderance of the evidence. *Muhammad v. State*, 337 Ark. 291, 988 S.W.2d 17 (1999); *Burris v. State*, 330 Ark. 66, 954 S.W.2d 209 (1997). "Knock and talk" is a method used by police officers to obtain valid consent to search. *See, e.g., United States v. Powell*, 929 F. Supp. 231, 232 (S.D. W.Va. 1996); *United States v. Cruz*, 838 F. Supp. 535, 543 (D. Utah 1993). The tactic has been used by police officers when there is information that drugs can be found in a residence but probable cause for a search warrant is lacking. *See State v. Smith*, 488 S.E.2d 210 (N.C. 1997). In *Smith*, the trial court explained the procedure as follows:

> The officers . . . proceed to the residence, knock on the door, and ask to be admitted inside. Thereafter gaining entry, the officers inform the person that they're investigating information that drugs are in the house. The officers then ask for permission to search and apparently are successful in many cases in getting the occupant's "apparent consent".

488 S.E.2d 210, 212 (N.C. 1997).

■ Under Ark. R. Crim. P. 11.1, an officer may conduct searches and make seizures without a search warrant or other color of authority if consent is given to the search or seizure. The consent for a warrantless search of an individual's home must be given freely and voluntarily, and the burden rests upon the State to prove by clear and positive evidence that consent was given freely and voluntarily. *Burdyshaw v. State*, 69 Ark. App. 243, 10 S.W.3d 918 (2000). On appeal, the reviewing court makes an independent determination based on the totality of the circumstances to determine if the State has met its burden. *Id.* Although we have stated that the State must prove that consent was not the product of duress or coercion, we have declined to say that mere acquiescence to lawful authority

is not consent. *See Evans v. State*, 33 Ark. App. 184, 804 S.W.2d 730 (1991), citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), and *Bumper v. North Carolina*, 391 U.S. 543 (1968).

 Hadl concedes on appeal, as he did below, that he gave the officers permission to conduct the search and that he never revoked the consent. He argues, however, that the "knock and talk" search is inherently coercive, and that it therefore violates the Fourth and Fourteenth Amendments of the United States Constitution as well as Arkansas Rules of Criminal Procedure governing arrest. Hadl also points to the rule of *State v. Ferrier*, 960 P.2d 927 (Wash. 1998), that prior to entering a house, police officers who conduct a "knock and talk" procedure to gain consent for a warrantless search of a home must inform a person that he or she may lawfully refuse to consent and may revoke the consent at any time. However, the Arkansas Supreme Court has stated that knowledge of the right to refuse consent to search is not a requirement to prove the voluntariness of consent, and that a finding of voluntariness will be affirmed unless that finding is clearly against the preponderance of the evidence. *Chism v. State*, 312 Ark. 559, 853 S.W.2d 255 (1993).

Officer Chris Poe of the Jonesboro Police Department testified at both the suppression hearing and at trial. Poe stated that he and Officer Weaver, acting on information about a possible methamphetamine lab, went to a house on Willow Road that turned out to be William Hadl's home. Poe said that he initially went to the rear of the house and Weaver went to the front, but that Weaver called him to the front of the house after Hadl's son answered the door. Poe testified that he told Mr. Hadl about the officers' information, that Hadl denied having a lab at the house, that Poe asked Hadl for consent to search his house, and that Hadl assented and also gave permission for Poe to go to the back of the house. Poe stated that he spent at least an hour in the house, that he found in Mr. Hadl's bedroom marijuana seeds and drug paraphernalia, and that he found an HCL generator beside the back porch at the rear of the house. Both officers testified that items pertaining to methamphetamine were found outside.

 Arkansas case law and rules of criminal procedure do not require police officers who gain consent for a warrantless search of a home to first inform a person that he or she may lawfully refuse to consent and may revoke the consent at any time. In the present case, Officer Poe testified that after he and Officer Weaver approached Hadl's house, Hadl's son consented to the officers' search of the house, and Hadl consented to further search of the

premises. The search resulted in seizure of items that led to the charges against Hadl and, ultimately, to his convictions. We find that the officers' testimony constitutes clear and positive evidence that consent was given freely and voluntarily, and was not the product of duress or coercion. Therefore, we affirm the trial court's denial of Hadl's motion to suppress the items that were found as a result of the warrantless search.

*Whether the trial court erred in refusing to suppress evidence because the prosecutor was unable to produce certain seized evidence*

At trial, the State introduced into evidence photographs of the seized items rather than the actual items that were seized. Hadl argues that his motion to suppress the photographs of the evidence should have been granted on the basis that the State destroyed the evidence. He argues that the items could have been subjected to fingerprint identification, and that such fingerprint evidence could have proved exculpatory if the fingerprints were found to belong to someone else. He concedes that the photographs accurately depict the items seized.

At the pretrial suppression hearing, the trial court ruled that Hadl could argue to the jury that fingerprints could have been taken as proof of who owned the items but that prints were not taken. At trial the court also ruled that Hadl's argument of prejudicial destruction of evidence could be made to the jury, and that the absence of items could be the subject of cross-examination. Officer J. P. French of the Jonesboro Police Department and the Second Judicial District Drug Task Force then testified that he took the photographs of the evidentiary items because the chemicals were considered to be hazardous waste. He testified that the hazardous-waste contractor was contacted after the items were tested at the state crime lab, and that the police department had no control of the items after the contractor seized them.

The Supreme Court held in *Brady v. Maryland*, 373 U.S. 83 (1963), that the prosecution's suppression of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or punishment, irrespective of the good faith or bad faith of the prosecution. In *Strickler v. Greene*, 527 U.S. 263 (1999), the *Brady* holding was extended to encompass impeachment evidence as well as exculpatory evidence, and the duty to disclose was held to apply even in the absence of a request by the accused.

*Larimore v. State*, 341 Ark. 397, 17 S.W.3d 87 (2000). Such evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different," and the rule encompasses evidence "known only to police investigators and not to the prosecutor." 341 Ark. at 404, 17 S.W.3d at 91 (quoting *Strickler, supra*).

■ Hadl states on appeal that he "feels that there is a reasonable probability" that the missing evidence "would have resulted in a different outcome" of his case. We do not view his bare allegation as rising to a reasonable probability that impeachment or exculpatory evidence would have been favorable to his defense. Thus, we find no merit in his contention that the trial court erred in refusing to suppress evidence because the prosecutor was unable to produce the seized items.

Affirmed.

JENNINGS, J., agrees.

GRIFFEN, J., concurs.

WENDELL L. GRIFFEN, Judge, concurring. I agree with the majority to affirm appellant's conviction. Nonetheless, I write separately to express my view that our law should require police officers conducting a "knock and talk" to inform individuals that they have a right to refuse or to revoke their consent to search.

The Fourth Amendment, which is applicable to the states through the due process clause of the Fourteenth Amendment, protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *See* U. S. Const. amend. IV. *See also Terry v. Ohio*, 392 U.S. 1 (1968). In a similar vein, article 2, section 15, of the Arkansas Constitution provides that "the right of the people of this State to be secure in their persons, houses, papers and effects against unrea-sonable searches and seizures shall not be violated."

As often stated, Fourth Amendment rights are personal and the primary focus of the amendment is on the protection of persons, not the protection of locations. *See Katz v. United States*, 389 U.S. 347 (1967). However, because individuals have a high expectation of privacy in their homes, our courts require voluntary consent absent other grounds to effectuate a warrantless search of the home. *See Payton v. New York*, 445 U.S. 573 (1979). Indeed, physical

intrusion into the privacy of a person's residence absent a warrant is the primary evil that the Fourth Amendment seeks to eradicate. *See United States v. Miller,* 933 F. Supp. 501 (M.D. N.C. 1996).

Although our appellate courts have not had the opportunity to extensively address "knock and talk," this procedure is recognized as a legitimate police method to obtain valid consent to search a residence. *See United States v. Powell,* 929 F. Supp. 231 (S.D.W.V. 1996). In a typical "knock and talk" situation, the police will receive information that drugs are within a residence. However, because the police do not have probable cause to obtain a warrant, they will approach the residence, knock on the door, and ask for permission to enter. Once inside, the officers will tell the resident that they are following up on information that drugs are inside the home. The officers will then ask the resident for permission to search the residence. *See, generally, State v. Smith,* 488 S.E.2d 210 (N.C. 1997).

Consent to conduct a search of a person's home without a warrant is a recognized exception to the presumption that searches and seizures inside a home without a warrant are unreasonable. *See United States v. Miller,* 933 F. Supp. 501 (1996) (M.D. N.C.) Whether a person is considered to have given voluntary consent is not contingent upon the person's being informed in advance of his right to refuse to give consent. *See United States v. Mendenhall,* 446 U.S. 544 (1980). However, whether a person had knowledge of the right to refuse consent is recognized as a factor to take into account when determining from the totality of the circumstances whether the person voluntarily consented to the search. *See Schneckloth v. Bustamonte,* 412 U.S. 218 (1973). Because the legitimacy of a "knock and talk" procedure hinges on whether the police gained voluntary consent to search the residence, the relatively few jurisdictions that have reviewed the appropriateness of this procedure have discussed consent.

In the seminal case of *State v. Ferrier,* 960 P.2d 927 (Wash. 1998), the Washington Supreme Court determined that police officers conducting a "knock and talk" procedure must inform a person that he may refuse consent, revoke consent, or limit the scope of the consent. In *Ferrier, supra,* the police went to Ferrier's residence to follow-up on information received by her son that Ferrier was conducting a marijuana grow operation at her home. Because the officers were unsure that the information was credible, they decided to conduct a "knock and talk." Four armed officers,

wearing raid jackets, knocked on Ferrier's door. After they identified themselves, Ferrier allowed the officers entry. The officers told Ferrier about the information they had obtained. They then asked Ferrier for consent to search the premises and asked her to sign a written consent form. However, the written form did not indicate that Ferrier had the right to refuse consent, and the officers admitted at trial that Ferrier was not told she had such a right. The *Ferrier* court noted that warrantless searches are presumptively invalid, and that Washington law provided additional protection against unlawful government intrusions. It then held that under the enhanced privacy expectation of the state constitution, the police violated Ferrier's right to privacy by failing to inform her that she had a right to refuse consent. *See Ferrier, supra.*

The Mississippi Supreme Court recently reviewed the issue of "knock and talk," and held that consent requires a knowledgeable waiver. *See Graves v. State,* 708 So.2d 858 (Miss. 1997). In other words, the defendant must know that he has a right to refuse to give consent, and must be cognizant of his rights in the premises.

As noted by appellant, "knock and talk" is a successful police tool because many individuals will not question the absence of a search warrant, either because they are unaware that the police must have a warrant to search the home absent exigent circumstances, or because they are "too stunned by the circumstances to make a reasoned decision about whether or not to consent to a warrantless search." *See Ferrier, supra.*

Under Arkansas law, police officers may search a residence without a warrant when the resident freely and voluntarily consents to the search. *See Burdyshaw v. State,* 69 Ark. App. 243, 10 S.W.3d 918 (2000). Although the State bears the burden of proving by clear and convincing evidence that the resident freely gave consent to search, the State does not bear the burden of proving that the resident knew that he was free to refuse consent in order for the consent to be deemed voluntary. *See id.* Regrettably, Arkansas law simply does not require that police inform a resident that he has a right to refuse to give consent and the right to revoke consent after a search begins. Thus, there is no guarantee that an individual who voluntarily consents to a warrantless search had the requisite knowledge to make an informed decision. Hopefully, our supreme court will remedy this shortcoming by holding that the State must prove that consent to a search has been knowingly and intelligently given.