Steven SANDERS *v.* STATE of Arkansas

CA CR 01-262 61 S.W.3d 871

Court of Appeals of Arkansas
Division I
Opinion delivered December 5, 2001

*Dale W. Finley*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Valerie L. Kelly*, Ass't Att'y Gen., for appellee.

JOHN E. JENNINGS, Judge. Steven Sanders was found guilty by a Newton County jury of possession of drug paraphernalia, simultaneous possession of drugs and firearms, possession of methamphetamine, and possession of marijuana. He was sentenced to terms of three years in prison for possession of drug paraphernalia and possession of methamphetamine to be served concurrently with

a ten-year sentence for simultaneous possession of drugs and fire-arms. He was fined $500 for possession of marijuana. On appeal, he contends that there is insufficient evidence to support his conviction for possession of drug paraphernalia and that the trial court erred in denying his motion to suppress evidence seized in searches of his vehicle and apartment. We find no reversible error and affirm.

On August 31, 1999, officers working under the Fourteenth Judicial District Drug Task Force were executing a search warrant at the residence of Sam Freeman in Newton County. The Freeman property was located northeast of Jasper off a county road. The residence and a shop were in a wooded area and sat at the end of a two-hundred-yard driveway.

At noon, Investigator Greg Harris was searching in the woods about half-way up the driveway when he heard a vehicle coming onto the property. The search was at an advanced stage at that point, and numerous illegal items had been found, including a methamphetamine lab and a stolen vehicle. By the sound of the approaching vehicle, Officer Harris did not believe it to be a police car, and he thought perhaps that personnel from the crime lab had arrived. He dismissed that notion when he heard the vehicle drive up to the residence, stop, and then head back out of the driveway to leave. Officer Harris walked toward the driveway and saw a pickup truck that was being driven by appellant. Harris said that the window was down and that he yelled to appellant to stop. Harris identified himself and asked appellant who he was and why he was there. Appellant told him that he was looking to find a transfer case for his truck. Harris asked appellant why he thought he could find a truck part there, and appellant said that someone had told him that he could. Appellant could not remember who had told him that, however. Harris then asked appellant if he knew who lived there. Appellant replied that he did not know who lived there and that he had not been there before. Harris then asked him how he had found the place, and appellant said that he had been told that the place to find truck parts was in Jasper.

Officer Harris testified that, under the circumstances, appellant's account did not ring true. He considered that the property was not in Jasper but in an out-of-the-way location where there were no signs for guidance and that this was the scene of a methamphetamine lab. Harris said that he asked appellant if there were any drugs or weapons in the truck. Appellant said that there were none. Harris testified that he asked appellant if he had a problem with him

checking and that appellant gave him permission to search the truck.

Investigator David Small testified that he overheard appellant consent to a search of the truck. In the search, he found a gray box under the driver's seat that contained a handgun. A cigar case was found on the front seat under either a towel or a piece of clothing. The cigar case contained an eighth of one ounce of marijuana and four grams of methamphetamine. Appellant was then placed under arrest.

Paul Woodruff, an officer with the Harrison Police Department, applied for and obtained a search warrant for appellant's apartment in Harrison. In the course of that search, officers found on the kitchen counter a receipt from Wal-Mart that listed the purchase of a cigar case.

Appellant testified at the suppression hearing that he had been having trouble with the transfer case on the front differential of his truck and that he had gone to the Freeman property to find the part he needed. He said that he did not know Mr. Freeman, but that he knew Freeman had a salvage yard and that he did mechanic work. Appellant testified that he drove to the shop where he met Officer Gary Jenkins, and he said that he asked Jenkins if this was the Freeman place since he had not been there before. Appellant said that Jenkins told him that it was Freeman's property but that Freeman was in jail. Appellant said Jenkins let him go but that he was stopped by Officer Darin Spears as he was backing out to leave. Appellant said that Spears also let him go after confirming with Officer Jenkins that Jenkins had already spoken to him. Appellant testified that Officer Harris then stopped him on the driveway and said, "Did you think that you'd leave without being searched when there's been two meth labs discovered?" Appellant said that Harris immediately ordered him out of the truck and told him that a warrant was not needed for him to search the truck. Appellant stated that Harris asked him if he was going to give them a hard time about the search. Appellant testified that he did not consent to a search of his truck, but that he only agreed that he would not give them a hard time.

Officer Harris testified in rebuttal that he did not tell appellant that he was going to search the truck or that a warrant was not necessary for him to do so.

Appellant's drug-paraphernalia conviction was based on his possession of the cigar case that contained marijuana and methamphetamine. Appellant argues that there is insufficient evidence to support this conviction because it is unreasonable to interpret the statute so broadly as to criminalize his possession of that object. We disagree.

■■ The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000). Evidence is substantial if it is of sufficient force that it would compel a conclusion one way or the other without recourse to speculation and conjecture. *Rose v. State*, 72 Ark. App. 175, 35 S.W.3d 365 (2000). In determining whether there is substantial evidence, we review the evidence in the light most favorable to the State. *Hale v. State*, 34 Ark. 62, 31 S.W.3d 850 (2000).

■■ Arkansas Code Annotated section 5-64-403(c)(1) (Supp. 1999) provides in pertinent part that it is unlawful for any person to use drug paraphernalia to store, contain, or conceal a controlled substance. The term "drug paraphernalia" includes all equipment, products and materials of any kind which are used to store, contain, or conceal controlled substances. Ark. Code Ann. § 5-64-101(v) (Repl. 1997). Specifically included within the definition of drug paraphernalia are containers and other objects that are used in storing or concealing controlled substances. Ark. Code Ann. § 5-64-101(v)(10) (Repl. 1997). Relevant factors in determining whether an object is drug paraphernalia include the proximity of the object to controlled substances, and the existence and scope of legitimate uses for the object in the community. Ark. Code Ann. § 5-64-101(v) (Repl. 1997).

■ The supreme court has held that the term "drug paraphernalia" is not unconstitutionally vague. *Moore v. State*, 297 Ark. 296, 761 S.W.2d 894 (1988); *see also Crail v. State*, 309 Ark. 120, 827 S.W.2d 157 (1992). The court has also ruled that there was sufficient evidence to support a conviction for this offense where the appellant was in possession of a vial that contained cocaine residue. *Edwards v. State*, 300 Ark. 4, 775 S.W.2d 900 (1989). *See also, e.g., Ramey v. State*, 42 Ark. App. 242, 857 S.W.2d 828 (1993).

■ Here, the appellant was in possession of a cigar case in which methamphetamine and marijuana were hidden. The jury could conclude that the case was used as a container to conceal

controlled substances. Such an object fits squarely within the statutory definition of drug paraphernalia. We cannot say there is no substantial evidence to support the guilty verdict.

■ Appellant next argues that the trial court erred by not suppressing the evidence found in his vehicle. He contends that the stop of his vehicle was not justified under either Rule 3.1 or 2.2 of the Rules of Criminal Procedure. We hold that the encounter was authorized under Rule 2.2.

Rule 2.2(a) provides:

> A law enforcement officer may request any person to furnish information or otherwise cooperate in the investigation or prevention of crime. The officer may request the person to respond to questions, to appear at a police station, or to comply with any other reasonable request.

The supreme court has interpreted Rule 2.2 to provide that an officer may approach a citizen in much the same way a citizen may approach another citizen and request aid or information. *State v. McFadden,* 327 Ark. 16, 938 S.W.2d 797 (1997). However, the approach of a citizen pursuant to a policeman's investigative law enforcement function must be reasonable under the existent circumstances and requires a weighing of the government's interest for the intrusion against the individual's right to privacy and personal freedom. *Baxter v. State,* 274 Ark. 539, 626 S.W.2d 935 (1982). To be considered are the manner and intensity of the interference, the gravity of the crime involved, and the circumstances attending the encounter. *Id.* The court has clarified that an encounter under this rule is permissible only if the information or cooperation sought is in aid of an investigation or the prevention of a particular crime. *Stewart v. State,* 332 Ark. 138, 964 S.W.2d 793 (1998).

For example, in *Baxter v. State, supra,* an officer stopped the appellant's vehicle in a park that was near a jewelry store that had just been robbed to ask if anyone had been seen in the park. As it turned out, the vehicle was occupied by the robbers. The supreme court held that the encounter was permissible under Rule 2.2 because the officer was seeking assistance in the investigation of a particular crime. *See also, Blevins v. State,* 310 Ark. 538, 837 S.W.2d 879 (1992). In *Bernal v. State,* 48 Ark. App. 175, 892 S.W.2d 537 (1995), a narcotics dog indicated that two suitcases on a bus contained drugs. The officer approached the appellant after he had exited the bus and asked appellant for identification. We held that

Rule 2.2 authorized the officer to approach the appellant in the course of investigating the drug-related crime. By contrast, in *Meadows v. State,* 269 Ark. 380, 602 S.W.2d 636 (1980), officers approached the appellant at an airport because he and a companion were looking back and had quickened their pace as they were followed by the officers in the terminal. The court held that the encounter was not justified under Rule 2.2 because the officers were not investigating any particular crime.

■ In the case at bar, the officers were executing a search warrant and had found evidence of illegal activity when appellant came onto the property. It was the scene of a clandestine metham-phetamine lab located in a remote area. Under the investigatory authority of Rule 2.2, it was permissible for the officers to approach the appellant to ask for identification and to inquire about the purpose of his visit.

■ Appellant further argues that the trial court erred in finding that he consented to the search of his truck. The testimony on this subject was conflicting, as the officers testified that appellant gave his consent while appellant testified that he did not. Conflicts in testimony are for the trial judge to resolve, and the judge was not required to believe any witness's testimony, especially that of the accused, since he is the person most interested in the outcome of the proceedings. *Tabor v. State,* 333 Ark. 429, 971 S.W.2d 227 (1998).

■ In reviewing a trial court's denial of a motion to suppress, the appellate court makes an independent examination based on the totality of the circumstances and will reverse only if the ruling was clearly against the preponderance of the evidence. *Hadl v. State,* 74 Ark. App. 113, 47 S.W.3d 897 (2001). We cannot say that the trial court's decision pertaining to the search of appellant's truck is clearly against the preponderance of the evidence.

Appellant's third argument is that there was no probable cause for the issuance of a warrant to search his apartment. The warrant was obtained based on the affidavit of Officer Woodruff and was predicated on the discovery of the weapon and drugs found in appellant's truck.

■ ■ Rule 13.1 of the Rules of Criminal Procedure sets out the requirements for the issuance of a search warrant. The rule requires the affidavit to recite facts and circumstances tending to show that such persons or things are in the places to be searched.

The task of the magistrate who issues the warrant is simply to make a practical, common-sense decision whether, given all of the circumstances set forth in the affidavit, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates,* 462 U.S. 213 (1983). We apply the totality-of-the-circumstances test in determining whether the magistrate had a substantial basis for concluding that probable cause existed to issue the warrant. *Stephenson v. State,* 71 Ark. App. 254, 29 S.W.3d 744 (2000).

In *Yancey v. State,* 345 Ark. 103, 44 S.W.3d 315 (2001), the appellant and a man named Lee Cloud were seen tending marijuana plants in a wooded area six miles from Cloud's residence. After watering the plants, the men drove to Cloud's house. Search warrants for both men's homes were issued based on these observed events. The appellant argued on appeal that those facts did not establish probable cause for the search of his home. The supreme court held that, for a search warrant to issue, either direct or circumstantial evidence must be provided to show that contraband or evidence of a crime is likely to be found in the place to be searched and that there must be a factual nexus between the evidence sought and the place to be searched. The court ruled that probable cause was lacking because there was no evidence to suggest that the homes were in any way associated with criminal activity.

▋▋ The court's holding in *Yancey* applies here. The search of appellant's apartment was authorized solely on the evidence found in appellant's vehicle. There was no evidence in the affidavit linking appellant's apartment with his distant possession of contraband. Therefore, we must conclude that the warrant was invalid.

▋▋ Nevertheless, we affirm the trial court's denial of the motion to suppress. The court in *Yancey* concluded that suppression was not warranted based on the good-faith exception to the exclusionary rule established in *United States v. Leon,* 468 U.S. 897 (1984). In *Leon,* the Court held that an officer's objective, good-faith reliance on a facially valid warrant will avoid the application of the exclusionary rule in the event that the magistrate's assessment of probable cause is found to be in error. This is because the exclusionary rule is designed to deter police misconduct rather than to punish errors of judges and magistrates. *Herrington v. State,* 287 Ark. 228, 697 S.W.2d 899 (1985). In applying the exception, the *Yancey* court noted that courts in other jurisdictions were divided over the issue of probable cause under similar facts and that the officers were

acting in good faith on the determination of probable cause made by the magistrate. We reach the same conclusion here and hold that the trial court did not err in denying the motion to suppress.

 Appellant further contends that the warrant was defective because it authorized the officers to search for "stolen property," the "fruits of any crime," and numerous items that he contends are unconnected to a search for controlled substances. Appellant concedes that courts have generally held that the inclusion of such broad language does not invalidate a warrant, but he argues that this language renders the search unreasonable from its inception. Appellant has cited no authority to support this proposition nor does he provide a convincing argument. For this reason, we need consider the issue no further. *Bunch v. State*, 344 Ark. 730, 43 S.W.3d 132 (2001).

Affirmed.

BIRD, J., agrees.

ROAF, J., concurs.

ANDREE LAYTON ROAF, Judge, concurring. I reluctantly concur in affirming Steven Sanders' conviction for possession of drug paraphernalia, a felony for which he received a three-year sentence in addition to the ten-year sentence he received for possession of the contraband that was found inside the cigar case. The relevant statutory provision, Ark. Code Ann. § 5-64-101(v)(10), defines drug paraphernalia as follows:

(v) The term "drug paraphernalia" means all equipment, products and materials of any kind which are used, . . . in . . . storing, containing, concealing, . . . a controlled substance. . . . It includes, but is not limited to:

. . . .

(10) Containers and other objects used, intended for use, or designed for use in storing or concealing controlled substances;

A cigar case is certainly a "product" or "material" and is a "container or other object." In this instance, Sanders used it to hold his drugs, and, while it may be argued that he was not "storing" or

"concealing" the drugs, the case certainly contained the drugs as provided in § 101(v).

Sanders argues that the evidence is insufficient to support his conviction for simply possessing the cigar case because it is a container that has no special relation to or adaptation for use with controlled substances. He contends that the drug paraphernalia statute, Ark. Code Ann. § 5-64-403 (1999), has been given an "unreasonable interpretation" not intended by our legislature in this instance. Sanders points out and, unfortunately, he is correct, that such an interpretation would likewise support a felony conviction for such an item as a paper bag, an envelope, a baseball cap, a cigarette package, or even a pants pocket.[1] Sanders's argument makes good common sense, however, that is not the kind of authority that this court can employ. Moreover, Sanders acknowledges that our supreme court has held that this statute is not unconstitutionally vague, *see Moore v. State*, 297 Ark. 296, 761 S.W.2d 894 (1988), *Edwards v. State*, 300 Ark. 4, 775 S.W.2d 900 (1989), *Crail v. State*, 309 Ark. 120, 827 S.W.2d 157 (1992), as has the Eighth Circuit court of appeals in *Garner v. Whitt*, 726, F.2d 1274 (8th Cir. 1984), albeit under different facts.

Even so, there is support for Sanders's argument in both Arkansas case law and cases from other jurisdictions. In *Dickerson v. State*, 324 Md. 163, 596 A.2d 648 (1991), the Maryland Court of Appeals held that the appellant could be convicted only of possession of cocaine with intent to distribute and not also of use of drug paraphernalia, where both convictions were based on possession of a single vial of cocaine. The Maryland drug paraphernalia statute provided in a section almost identical to Arkansas's that, "[i]t is unlawful for any person to use drug paraphernalia to . . . store, contain or conceal a controlled dangerous substance . . ." and contained a definitions section likewise identical to ours. The

---

[1] *Webster's New Twentieth Unabridged Dictionary* defines "paraphernalia" as

 1. personal belongings;

 2. Any collection of articles usually used in some activity; equipment, apparatus; trappings; gear.

However, Ark. Code Ann. § 1-2-203(b) (Repl. 1996), a general provision of statutory construction applicable to all cases, civil and criminal, provides that "[w]henever, in any statute, words importing the plural number are used in describing or referring to any matter, parties, or persons, any single matter, party, or person shall be deemed to be included although distributive words may not be used," consequently, a conviction for possession of a single item of paraphernalia does not run afoul of the mandate that criminal statutes be strictly construed in favor of an accused.

Maryland court found persuasive the appellant's argument that the Legislature did not intend to permit dual convictions where the drug paraphernalia conviction is premised solely on the use of a container in which the contraband forming the basis for the drug offense is found.

In Arkansas, there are many cases, too numerous to list, involving a conviction for possession of multiple drug-related items, or "paraphernalia," and where drugs and paraphernalia items were also found in a "box" or "bag" or other similar, otherwise innocuous container. While these cases are numerous, it is significant that I have not found any of these cases to include, directly or by inference, the box or bag within paraphernalia enumerated or addressed in the court's analysis. *See e.g., Hughes v. State*, 74 Ark. App. 126 (2001) (trash bags in which paraphernalia was found not discussed in analysis); *Thompson v. State*, 333 Ark. 92, 966 S.W.2d 901 (1998) (eyeglass case not analyzed as drug paraphernalia); *White v. State*, 47 Ark. App. 127, 886 S.W.2d 876 (1994) (*Crown Royal* bag containing drugs not discussed in sufficiency analysis); *Bond v. State*, 45 Ark. App. 177, 873 S.W.2d 569 (1994) (pipe as paraphernalia, but paper bag marijuana found in not discussed).

However, there are at least two Arkansas cases in which a paraphernalia conviction was based on possession of a single item. In *Edwards v. State, supra,* the supreme court found that a small vial containing cocaine residue was sufficient evidence to support the conviction because the statute specifically included "cocaine vials." *See* Ark. Code Ann. § 5-64-101(v)(12)(F). In *Crail v. State, supra,* the appellant's felony conviction was based on his possession of a small white pipe that was found to have been used to smoke marijuana, while he received only a misdemeanor conviction for the marijuana he possessed. However, Crail's appeal of the paraphernalia conviction was based on an equal protection and void-for-vagueness challenge to the paraphernalia statute. Pipes are also specifically listed as paraphernalia in § 101(v)(12)(A), and it can be argued that these two cases are therefore distinguishable because they involve items bearing a special relation to the use of contraband, however, this is an argument that would best be addressed to our supreme court.

Even a dog gets one bite; surely even a miscreant such as Mr. Sanders should get one paper sack, or, in this instance, one cigar case to carry his drugs around in without being twice made a felon for it. However, it is for the Legislature to make the criminal laws, and the prosecutor to employ his very broad power and discretion

to determine when and if a charge is to be brought. We can be at least relieved that we have not yet seen the conviction based on possession of a paper sack that Sanders warns of. Perhaps our supreme court would revisit the constitutionality of the paraphernalia statute if that occurs. Until then, because this court lacks the discretion of a legislature or a prosecutor, or the ability to overturn supreme court precedent, I must agree to affirm this conviction.