James Joseph STANDLEY, Jr. *v.* STATE of Arkansas

CA CR 87-213                                    751 S.W.2d 364

Court of Appeals of Arkansas
Division I
Opinion delivered June 15, 1988

*Billy J. Allred*, for appellant.

*Steve Clark*, Att'y Gen., by: *Olan W. Reeves*, Asst. Att'y Gen., for appellee.

JOHN E. JENNINGS, Judge. The appellant, James Standley, was found guilty by a jury of the manufacture of a controlled substance (marijuana), possession of a controlled substance (cocaine), possession of a controlled substance with intent to deliver (marijuana), and being a felon in possession of a firearm. The trial court sentenced him to a total of 30 years in prison and fined him a substantial sum. Before trial, appellant filed a motion to suppress evidence. After a hearing, the trial court denied the motion. The sole issue on appeal is whether this was error.

On or about August 26, 1986, Captain Lonnie Nichols, a Carroll County Sheriff's Deputy, received a phone call from a confidential informant telling him that appellant was growing marijuana at his home. On September 2, 1986, Carroll County Sheriff Leroy Shower and two deputies, drove out to appellant's place, in rural Carroll County, in an unmarked pickup truck. They saw that appellant's house was surrounded by a fence and that there were tall weeds growing up in back of the house. They could not see what lay behind the weeds from the road.

The officers decided to park the truck on the road and investigate from behind appellant's east fence. To do so they went through a gate into a field, apparently owned by appellant's neighbor, went over a cross-fence, and entered an area of heavy woods located just to the east of appellant's property. From this

vantage point they could see into a garden area, fenced off with barbed wire and bounded on three sides by tall weeds. The officers could see what appeared to be five foot marijuana plants growing in the garden area (see diagram).

Deputy Behymer estimated that it was about 20 to 30 yards from their vantage point in the woods to the marijuana patch. There was also testimony that the marijuana lay less than 50 feet from the back of appellant's house. In order to get a closer look, the officers crossed Standley's east fence and entered an open area just to the east of the fenced marijuana patch. They did not cross the fence that surrounded the patch.

They then left the area and obtained a search warrant from Municipal Judge Allen Epley. The subsequent search produced marijuana, cocaine, and several firearms.

The question for decision is whether what the officers did, before obtaining the search warrant, constituted an unreasonable search in violation of the Fourth Amendment, as made applicable to the states through the due process clause of the Fourteenth Amendment. We affirm the trial court's decision that it did not.

The substance of appellant's argument is (1) that the fenced marijuana patch was a part of the curtilage of his home and (2) that because the officers had no permission to be in the appellant's neighbor's woods nor to be in the open area on appellant's property behind the marijuana patch, their visual observation into the curtilage constituted an unreasonable search. While we agree with the first proposition we cannot agree with the second.

In *Sanders* v. *State*, 264 Ark. 433, 572 S.W.2d 397 (1978), the defendant had a garden located between 100 and 200 yards behind his house trailer. A fence separated the trailer from the garden. The garden contained vegetables and growing marijuana plants. A water hose ran from the house trailer to the garden. Police officers searched the defendant's house and found the marijuana growing in his garden. On appeal the supreme court held that the garden was part of the curtilage.

In *Gaylord* v. *State*, 1 Ark. App. 106, 613 S.W.2d 409 (1981), we held that the test to be applied in distinguishing an open field from curtilage was whether the marijuana patch lay within the defendant's reasonable expectations of privacy, rely-

ing on *Katz* v. *United States*, 389 U.S. 347 (1967).

In *United States* v. *Dunn*, 480 U.S. ___, 107 S. Ct. 1134 (1987), the court said that the curtilage question should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home; whether the area is included within an enclosure surrounding the home; the nature of the uses to which the area is put; and the steps taken by the resident to protect the area from observation by people passing by. The Court said that these factors were only "useful analytical tools," in determining whether the area in question is so intimately tied to the home itself that it should be placed under the home's "umbrella" of Fourth Amendment protection. *Dunn* at ___, 107 S. Ct. at 1139. Whether we apply the holding in *Sanders*, the test we used in *Gaylord*, or the factors described in *Dunn*, the appellant's marijuana patch was part of the curtilage.

Our next inquiry is whether the officer's conduct constituted an unreasonable search of appellant's property. *State* v. *Peakes*, 440 A.2d 350 (Me. 1982), is almost in point. There two police officers had received an anonymous tip that the defendant was growing marijuana in a garden behind his house. They drove past his house on a rural road but were unable to see the garden. They obtained permission from the defendant's neighbor to go onto the neighbor's land, walk to the boundary line separating the two tracts, and from there were able to see the growing marijuana plants. They left and obtained a search warrant. The defendant contended that the officers' observation of the plants constituted an unreasonable search of his property, a contention which the Supreme Court of Maine rejected. The court said:

> The defendant correctly notes that his garden was not open or exposed to the public. But the defendant made no attempt to conceal the garden from the view of his neighbors. He cannot be said to have had an actual expectation of privacy in the garden under the circumstances. There was no invasion of his property. The officers observed something which was "open and patent" to the defendant's neighbors and their invitees. [Citations omitted.]

The only real difference between *Peakes* and the case at bar is that here the permission of appellant's neighbor was not

obtained. But in *Oliver* v. *United States*, 466 U.S. 170 (1983), the Court held that the government's intrusion upon an open field does not become a search in the constitutional sense merely because that intrusion is a trespass at common law. In the case of open fields, the general rights of property protected by the common law of trespass have little or no relevance to the applicability of the Fourth Amendment. *Oliver*, 466 U.S. at 184.

Unquestionably, a wooded area may be an open field as that term is used in the context of the Fourth Amendment. *Oliver*, 466 U.S. 170, 180 n.11; *Bedell* v. *State*, 257 Ark. 895, 521 S.W.2d 200 (1975). While this is not an open field search case it is clear that the officers' observations were made from "open fields."

The Court in *Oliver* reversed *State* v. *Thornton*, 453 A.2d 489 (Me. 1982). In *Thornton* an officer received a tip from an unidentified informant that marijuana was growing in a wooded area behind the defendant's mobile home. The officers crossed a fence, entered onto the defendant's property through a footpath and found marijuana growing in two clearings fenced in with chicken wire. The marijuana could not be seen from the public road or from neighboring land. The property was posted with no trespassing signs. The Maine Supreme Court had unanimously held that the officers' conduct constituted an unreasonable search.

In *California* v. *Ciraolo*, 476 U.S. 207 (1985), once again the police had received an anonymous tip that the defendant was growing marijuana in his backyard, which was enclosed by two fences and shielded from view at ground level. The officers hired a private airplane, flew over the defendant's house and identified marijuana plants growing in the yard. These observations provided the basis for a subsequent search warrant.

The United States Supreme Court reversed the California court's holding that the warrantless aerial observation of defendant's yard violated the Fourth Amendment. The *Ciraolo* Court said:

> That the area is within the curtilage does not itself bar all police observation. The Fourth Amendment protection of the home has never been extended to require law enforcement officers to shield their eyes when passing by a home on

public thoroughfares. Nor does the mere fact that an individual has taken measures to restrict some views of his activities preclude an officer's observation from a public vantage point where he has a right to be and which renders the activities clearly visible. [Citations omitted.]

In *United States* v. *Dunn*, 480 U.S. ___, 107 S. Ct. 1134 (1987), police officers had information that chemicals which could be used in drug preparation were located in the vicinity of a barn on the defendant's 200 acre ranch. The barn was located about 60 yards from the defendant's house. The ranch had a perimeter fence and several cross fences, including a fence which surrounded the ranchhouse but did not enclose the barn.

Without a warrant and without probable cause the officers crossed the outer fence and entered the ranch. They crossed two more fences to get near the barn where they smelled what they thought were drugs. They approached the barn and although they did not enter it, they shined a flashlight through an opening to observe what they thought to be a drug laboratory. The officers then left and obtained a warrant.

While the Court in *Dunn* expressly held that the barn was not part of the curtilage, it did assume, for purposes of the opinion, that the "barn enjoyed Fourth Amendment protection and could not be entered and its contents seized without a warrant." *Dunn*, 480 U.S. at ___, 107 S. Ct. at 1140. The Court said:

[T]he officers never entered the barn, nor did they enter any other structure on respondent's premises. Once at their vantage point, they merely stood, outside the curtilage of the house and in the open fields upon which the barn was constructed, and peered into the barn's open front. And, standing as they were in the open fields, the Constitution did not forbid them to observe the phenylacetone laboratory located in respondent's barn. . . .

Under *Oliver* and *Hester*, there is no constitutional difference between police observations conducted while in a public place and while standing in the open fields. Similarly, the fact that the objects observed by the officers lay within an area that we have assumed, but not decided, was

protected by the Fourth Amendment does not affect our conclusion.

*Dunn*, 480 U.S. ___, 107 S. Ct. at 1141.

■ Observations from outside the curtilage of activities within are not generally interdicted by the Constitution. *Fullbright* v. *United States*, 392 F.2d 432 (10th Cir. 1968).

■ Our conclusion is that under *Oliver, Ciraolo,* and *Dunn*, the warrantless naked-eye observation of the appellant's curtilage from an adjacent open field did not constitute an unreasonable search within the meaning of the Fourth Amendment.

Affirmed.

COOPER and MAYFIELD, JJ., agree.

44

CASE #19-15-36   STATE -VS- JAMES STANDLEY

THIS SKETCH IS NOT TO SCALE!

DRAWN BY MARCELS R. PATE