Johnny "Red" HUDSPETH *v.* STATE of Arkansas

CR 01-1222                                          78 S.W.3d 99

Supreme Court of Arkansas
Opinion delivered June 20, 2002

*David P. Henry*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

W H."DUB" ARNOLD, Chief Justice. This is an appeal from the trial court's denial of appellant's motion to suppress hidden–camera videotape evidence and finding such to be permitted as an "open–field" search. We affirm the trial court.

On July 18, 2000, Mike Moffet, a Criminal Investigator for the Marion County Sheriff's Office, received information from an Arkansas State Police Sergeant that a possible methamphetamine laboratory was located on property adjoining that of Mr. Dennis Hudspeth, appellant's brother. The property identified is an undeveloped ten–acre tract, abutting a twenty–acre undeveloped tract owned by Mr. Hudspeth.

Investigator Moffet conducted an "open–field search" of the property, by entering from two properties, over–circling around, and coming in from the back, where he found a crude hut and numerous items of apparent drug paraphernalia. Photographs were taken of the hut and the items found. The photos were introduced by the State as exhibits.

On July 19, 2000, Investigator Moffet returned to the site with Tommy Cleveland, an Arkansas State Police Investigator who was asked to place a video–recording device, known as a "ground-hog," near the area to determine whether a methamphetamine laboratory was located there. The video camera was placed approximately twenty yards from the front of the hut.

On or about July 27, 2000, the officers checked the video camera and found appellant Johnny "Red" Hudspeth, his brother

Dennis Hudspeth, and a man later identified as Eugene Fischer engaged in an apparent methamphetamine "cook." However, on July 24, 2000, prior to viewing the tape, Investigator Moffet executed an affidavit in support of the issuance of a search warrant to search the A-frame residence on the property, which is one-eighth mile from the hut or site of the suspected methamphetamine laboratory. After a search of the A-frame residence where appellant resided, an affidavit requesting an arrest warrant was executed on August 1, 2000. The affidavit specifically described the location of the video camera and the identification of appellant and his brother and the acts caught on videotape.

On August 2, 2000, a criminal information was prepared charging appellant with criminal attempt to manufacture a controlled substance (methamphetamine), a class A felony, and possession of drug paraphernalia with intent to manufacture methamphetamine, a class B felony. The information specifically referred to the videotape as a basis for the information. On August 3, 2000, a bench warrant for the arrest of appellant was issued.

On December 8, 2000, appellant filed a motion to suppress, asserting that the unauthorized use of the video camera violated the Fourth and Fourteenth Amendment to the United States Constitution, seeking the suppression of the video tape, including the evidence obtained as a result of the search of appellant's residence. A hearing was held on March 18, 2001, on appellant's motion to suppress. After hearing all of the evidence, the trial court denied appellant's motion. The trial court found that the groundhog camera operations were "open field" and not in violation of the Fourth Amendment.

On April 23, 2001, an amended affidavit was filed by Investigator Moffet seeking a new arrest warrant, charging appellant with the following: possession of a controlled substance with intent to deliver methamphetamine, a class Y felony; manufacturing a controlled substance, methamphetamine, a class Y felony; possession of drug paraphernalia with intent to manufacture methamphetamine, a class B felony; possession of drug paraphernalia, a class C

felony; possession of pseudo/ephedrine with intent to manufacture methamphetamine, a class D felony; and simultaneous possession of drugs and firearms, a class Y felony. The amended affidavit specifically set forth the videotape and the items obtained in the search of his residence as the basis for the charges. On April 26, 2001, an amended information was filed, setting forth the video filming of appellant and the items obtained in the search of his residence as the basis for the amended charges which were the same as set forth in the amended affidavit.

On June 25, 2001, conditioned on this Court's review of the suppression ruling, appellant entered a plea of guilty to manufacture of a controlled substance and possession of a controlled substance with intent to deliver. The balance of the charges were dismissed. Appellant was sentenced to 120 months and 240 months, respectively, to run concurrently. On July 19, 2001, appellant filed his notice of appeal. For his only point on appeal, appellant asserts that the trial court erred by failing to suppress hidden-camera videotape evidence and finding such to be permitted as an "open-field" search. We affirm.

## I. Standard of Review

In reviewing a ruling denying a defendant's motion to suppress, we make an independent determination based on the totality of the circumstances and view the evidence in the light most favorable to the State. We reverse only if the trial court's ruling is clearly against the preponderance of the evidence. *Laime v. State*, 347 Ark. 142, 60 S.W.3d 464 (2001); *Burris v. State*, 330 Ark. 66, 954 S.W.2d 209 (1997); *Wofford v. State*, 330 Ark. 8, 952 S.W.2d 646 (1997).

## II. Discussion

Although appellant states as his point on appeal that the trial court erred by failing to suppress hidden-camera videotape evidence and finding such to be permitted as an "open-field" search, his actual argument does not appear to take issue with the trial court's conclusion that the search and camera operations were

"open field searches." Rather, his principal argument appears to be that the warrantless video surveillance, *by itself*, violated the Fourth Amendment and that, because the contents of the tape provided a nexus between his activity in the open field and the items to be seized from the A-frame house, the evidence seized pursuant to the search warrant was the "fruit of the poisonous tree." Based on the testimony and evidenced adduced at the suppression hearing, however, it is clear that the contents of the videotape had nothing to do with the issuance of the *search* warrant. As such, we find no error.

At the suppression hearing, Investigator Moffet testified that he received information from the Arkansas State Police indicating that a crude hut on property adjoining the appellant's contained a methamphetamine laboratory. He started an investigation on July 18, 2000, by conducting an "open-field search," in which he and Investigator Yancey "entered from two properties over and circled around and came in from the backside." Investigator Moffet testified that there was an "A-frame" residence nearby, but that he and Investigator Yancey confined their search to an area that was at least 100 yards away. He further testified that as they initially approached the property "approximately a half of a quarter mile" behind the A-frame, they saw a crude hut built from hog panels and a brown tarpaulin. In the area surrounding the hut, they discovered "numerous items of drug paraphernalia." Additionally, next to an access road on the property, the investigators discovered a camper shell that contained ".41 caliber ammunition and a jar that [they] believe[d] could possibly be used to manufacture iodine crystals."

Investigator Moffet testified that he subsequently contacted Investigator Tommy Cleveland of the Arkansas State Police about installing a "groundhog" video camera on the property "to see if, in fact, there was a methamphetamine laboratory out there." On July 19, 2000, they installed the camera at a vantage point approximately twenty yards away from the opening of the makeshift hut. At that time, they also discovered eight used HCL generators, which are components of a methamphetamine laboratory. When

they collected the videotape about one week later, they discovered that the camera had indeed recorded a "cook" in which the appellant, his brother Dennis, and Eugene Fischer participated.

However, on July 24, 2000, *before* the officers collected the videotape from the groundhog camera,[1] Investigator Moffet executed an affidavit of probable cause to obtain a *search warrant* for the A-frame house. In the affidavit, Investigator Moffet alleged that, in the preceding 130 days, an empty can of starting fluid that had been stolen from a canoe rental store and that bore fingerprints that tentatively matched the appellant's were discovered in a trash pile outside the curtilage of the A-frame house. He further alleged that, within the last ninety days, a "Good Citizen Confidential Informant" reported to an investigator with the Mountain Home Police Department that the appellant's brother, Brady Horton, and Julia Dodd were manufacturing methamphetamine at the "A-frame house on Rush Road."

Investigator Moffet then described, in the affidavit, what he saw during the open-field search that he and Investigator Yancey conducted, including a driveway that "began at the Hudspeth driveway and continued back off the potential defendant's property" and "leading directly" to the makeshift hut, and, within the hut, a note apparently written by the appellant's brother, Dennis. He also described the components of the methamphetamine laboratory that he discovered on the day that he and Investigator Cleveland installed the video surveillance camera. Because he had not yet viewed the tape, Investigator Moffet apparently did not allege *any* facts gathered by the "groundhog" video camera in his affidavit to obtain the search warrant. The contents of the videotape, therefore, had no connection with the issuance of the *search* warrant.

■ ■ It is well established that only evidence that is discovered by exploitation of an illegality can be suppressed as "fruit

---

[1] The amended information alleges that the police checked the contents of the film on July 27, 2000, three days *after* Investigator Moffet executed the affidavit and obtained the search warrant.

of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). In other words, there must be a *causal connection* between the alleged illegal conduct by the police and the discovery of the evidence that is claimed to be the "fruit" of the illegality. *See Brown v. Illinois*, 422 U.S. 590, 603-04 (1975) (setting forth factors to consider in determination of whether causal chain between illegal arrest and custodial statement has been broken). In this case, Investigator Moffet executed the affidavit and obtained the search warrant three days *before* he viewed the contents of the videotape. Furthermore, the affidavit only refers to "set[ting] up the video camera" as the reason for returning to the site of the suspected laboratory; it does *not* allege any information that was gathered from the *contents* of the videotape. Therefore, even assuming, *arguendo*, that the use of the "groundhog" video camera was an illegal search, it has no causal connection to the evidence seized pursuant to the search warrant.

█ Furthermore, use of the "groundhog" camera in no way violated the Fourth Amendment. The Supreme Court has held that the use of photographic equipment to gather evidence that could lawfully be observed by a law enforcement officer does not violate the Fourth Amendment. *United States v. McIver*, 186 F3d 1119, 1125 (9th Cir. 1999), *cert. denied*, 528 U.S. 1177 (2000) (holding that video surveillance of marijuana garden in National Forest did not violate the Fourth Amendment); *see also State v. Holden*, 964 P.2d 318, 321-22 (Utah Ct. App. 1998), *cert. denied*, 982 P.1d 88 (1998)(refusing to adopt a *per se* rule requiring the state to obtain a search warrant any time it wishes to use video surveillance of residential property). In other words, a warrant is not required when video surveillance is used to record activity in an area where the suspect has no reasonable expectation of privacy. *See Holden*, 964 P2d at 321-22; *cf. Dow Chemical Company v. United States*, 476 U.S. 227, 236-40 (1986)(because Dow had no reasonable expectation of privacy in the outdoor areas of its manufacturing plant, aerial photography with a mapping camera did not violate the Fourth Amendment). In this case, the appellant does not question the trial court's finding that the "groundhog" camera was placed on a neighbor's property and recorded activity

that took place in an open field. As such, because appellant had no reasonable expectation of privacy in the open field, *see Oliver v. United States*, 466 U.S. 170, 179-80 (1984), the warrantless video recording did not violate the Fourth Amendment.

■ Moreover, inasmuch as the appellant contends that the affidavit failed to establish probable cause to search the A-frame house, this Court rejects his argument. Arkansas Rule of Criminal Procedure 13.1(b) (2001) provides, in pertinent part, that an application for a search warrant is sufficient if "it describes circumstances establishing reasonable cause to believe that things subject to seizure would be found in a particular place." In other words, probable cause requires a *nexus* between criminal activity and the item to be seized and also a nexus between the item to be seized and the place to be searched. *See Yancey v. State*, 345 Ark. 103, 115, 44 S.W.3d 315, 322 (2001).

■ In this case, as set forth above, the affidavit to obtain the search warrant alleged facts that connected the A-frame house to the makeshift hut and open field in which the police discovered the components of a methamphetamine laboratory. Thus, even without the videotape depicting the appellant's involvement in a "cook," the magistrate did not err by concluding that there was probable cause to issue a search warrant for his house; and, as such, the trial court did not err in denying appellant's motion to suppress. For these reasons, we affirm the trial court's decision.

Affirmed.