Ronnie POLSTON *v.* STATE of Arkansas

CR 04-651 201 S.W.3d 406

Supreme Court of Arkansas
Opinion delivered January 20, 2005

*John Wesley Hall, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Lauren Elizabeth Heil*, Ass't Att'y Gen., for appellee.

JIM HANNAH, Chief Justice. Appellant Ronnie Polston entered a plea of guilty to possession of methamphetamine, possession of marijuana with intent to deliver, possession of drug paraphernalia, and possession of drug paraphernalia with intent to use. The Independence County Circuit Court sentenced Polston to two years' confinement in a Regional Punishment Facility, to be followed by a five-year suspended sentence. In addition, Polston was assessed a $2500 fine, court costs of $150, and a $250 DNA testing fee. Polston does not appeal the plea or the sentence of the circuit court. Rather, he argues that DNA testing of non-violent offenders or non-sexual offenders, pursuant to the State Convicted Offender DNA Database Act ("DNA Act"), constitutes an unreasonable search and seizure under the Fourth Amendment of the United States Constitution and article 2, section 15, of the Arkansas Constitution. Further, Polston argues that DNA testing of non-violent drug offenders is an unreasonable search and violates a basic right of privacy, the "right to be let alone" guaranteed in the Bill of Rights to the United States Constitution and Arkansas Constitution, as well as Arkansas privacy law as a whole.

This appeal presents questions concerning the interpretation or construction of the Constitution of Arkansas, as well as issues concerning federal constitutional interpretation. Therefore, we have jurisdiction of this matter pursuant to Ark. Sup. Ct. R. 1-2(a)(1) and (b)(6). We hold that the collection of DNA samples

of felons pursuant to the DNA Act is reasonable and not unconstitutional. Accordingly, we affirm.

## DNA Act

In 1997, the General Assembly enacted the "DNA Detection of Sexual and Violent Offenders Act," codified at Ark. Code Ann. § 12-12-1101 (Repl. 1999). The purpose of the DNA Act is to assist in criminal investigations, to exclude individuals who are the subjects of criminal investigations or prosecutions, and to deter and detect recidivist acts. *See* Ark. Code Ann. § 12-12-1102(1), (3) (Repl. 2003).

In 2003, the General Assembly renamed the Act the "State Convicted Offender DNA Database Act," *see* Ark. Code Ann. § 12-12-1101 (Repl. 2003), and amended it to provide for DNA testing of all individuals convicted of all "qualifying offenses." Ark. Code Ann. § 12-12-1109(a) (Repl. 2003). A "qualifying offense," in pertinent part, means "any felony offense as defined in the Arkansas Criminal Code." Ark. Code Ann. § 12-12-1103(9) (Repl. 2003). Under the Act, any person adjudicated guilty of a felony is required to have a DNA sample drawn upon intake to confinement, as a condition of any disposition that does not require confinement, or, if already confined, immediately after sentencing. *See* Ark. Code Ann. § 12-12-1109(a).

DNA samples are sent to the State Crime Laboratory, where they undergo typing analysis and are stored on the State DNA Database. *See* Ark. Code Ann. § 12-12-1112(a)(1) (Repl. 2003). In addition to storing samples obtained from offenders, the State Crime Lab stores DNA records related to crime scene evidence, unidentified persons or body parts, and relatives of missing persons. *See* Ark. Code Ann. § 12-12-1105(b) (Repl. 2003). Further, the State Crime Lab may include the offender's DNA records in an anonymous population database compiled for statistical purposes. *See* Ark. Code Ann. § 12-12-1112(d) (Repl. 2003). The State Crime Lab transmits DNA records to the Federal Bureau of Investigation for storage and maintenance in CODIS,[1] the FBI's national DNA identification system that allows the storage and

---

[1] The term "CODIS" is derived from Combined DNA Index System. Ark. Code Ann. § 12-12-1103(3)(B) (Repl. 2003). All fifty states participate in CODIS. *CODIS Combined DNA Index System, available at* http://www.fbi.gov/hq/lab/codis/index1.htm.

exchange of DNA records submitted by state and local forensic laboratories. *See* Ark. Code Ann. §§ 12-12-1105(a)(2) & 12-12-1103(3)(A) (Repl. 2003).

### Fourth Amendment Challenge

Polston argues that the DNA testing of non-violent or non-sexual offenders pursuant to the DNA Database violates Fourth Amendment rights against unreasonable searches and seizures. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." "The Amendment guarantees the privacy, dignity, and security of persons against certain arbitrary and invasive acts by officers of the Government or those acting at their discretion." *Skinner v. Railway Labor Executives Ass'n*, 489 U.S. 602, 613-14 (1989). It is well settled that the taking of blood by a law enforcement officer amounts to a Fourth Amendment search and seizure. *Schmerber v. California*, 384 U.S. 757 (1966); *Haynes v. State*, 354 Ark. 514; 127 S.W.3d 456 (2003); *Russey v. State*, 336 Ark. 401, 985 S.W.2d 316 (1999); *Mills v. State*, 322 Ark. 647, 910 S.W.2d 682 (1995). However, only those searches and seizures that are deemed unreasonable are proscribed by the Fourth Amendment. *Skinner*, 489 U.S. at 619. What is reasonable " 'depends on all of the circumstances surrounding the search or seizure and the nature of the search and seizure itself.' " *Id.* (quoting *United States v. Montoya de Hernandez*, 473 U.S. 531, 537 (1985)). "Thus, the permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. 648, 654 (1979).

The State concedes that the drawing of DNA pursuant to the DNA Act is a search for the purposes of the Fourth Amendment; however, the State argues that the search is constitutional for two independent reasons. The State first argues that the DNA Act is constitutional because the collection of a DNA sample from non-violent felons is a "special needs" search that is reasonable even in the absence of individualized suspicion.[2] Additionally, the

---

[2] As a general rule, a search or seizure is unreasonable "in the absence of individualized suspicion of wrongdoing." *City of Indianapolis v. Edmond*, 531 U.S. 32, 37 (2000). However,

State argues that even if the collection of a DNA sample from non-violent felons is not a "special needs" search, it is nonetheless constitutional because it is reasonable under the totality of the circumstances.

 The United States Supreme Court has not addressed the issue of whether the DNA testing of non-violent offenders is an unreasonable search and seizure under the Fourth Amendment. Courts that have reviewed the constitutionality of DNA collection statutes have used differing approaches in addressing a Fourth Amendment challenge. Some courts have determined that the collection of DNA samples from offenders falls within the "special needs" exception. *See, e.g., Green v. Berge*, 354 F.3d 675 (7th Cir. 2004); *United States v. Kimler*, 335 F.3d 1132 (10th Cir. 2003); *Roe v. Marcotte*, 193 F.3d 72 (2d Cir. 1999); *Vore v. United States Dep't of Justice*, 281 F. Supp. 2d 1129 (D. Ariz. 2003); *Miller v. United States Parole Comm'n*, 259 F. Supp. 2d 1166 (D. Kan. 2003); *United States v. Sczubelek*, 255 F. Supp. 2d 315 (D. Del. 2003); *United States v.Reynard*, 220 F. Supp. 2d 1142 (S.D. Cal. 2002); *State v. Martinez*, 276 Kan. 527, 78 P.3d 769 (2003); *State v. Olivas*, 122 Wash. 2d 73, 856 P.2d 1076 (1999); *State v. Surge*, 122 Wash. App. 448, 94 P.3d 345 (Wash. Ct. App. 2004); *State v. Steele*, 155 Ohio App. 3d 659, 802 N.E.2d 1127 (2003); *In re D.L.C.*, 124 S.W.3d 354 (Tex. Ct. App. 2003). Other courts have used the totality-of-the-circumstances approach, weighing the interests of the State and those offenders involved. *See, e.g., United States v. Kincade*, 379 F.3d 813 (9th Cir. 2004); *Groceman v. United States Dep't of Justice*, 354 F.3d 411 (5th Cir. 2004); *Jones v. Murray*, 962 F.2d 302 (4th Cir. 1992); *United States v. Stegman*, 295 F. Supp. 2d 542 (D. Md. 2003); *Padgett v. Ferrero*, 294 F. Supp. 2d 1338 (N.D. Ga. 2003); *Shelton v. Gudmanson*, 934 F. Supp. 1048 (W.D. Wis. 1996); *Kruger v. Erickson*, 875 F. Supp. 1210 (D. Minn. 1995); *Sanders v. Coman*, 864 F. Supp. 496 (E.D.N.C. 1994); *Ryncarz v. Eikenberry*, 824 F. Supp. 1493 (E.D. Wash. 1993); *In re Maricopa Juvenile County Action*, 187 Ariz. 419, 930 P.2d 496 (Ct. App. 1996); *People v. King*, 82 Cal. App. 4th 1363, 99 Cal. Rptr. 2d 220 (2000); *L.S. v. State*, 805 So. 2d 1004 (Fla. Dist. Ct. App. 2001); *Landry v. Attorney General*, 429

---

the Court has recognized exceptions to this rule in cases where " 'special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable.' " *Skinner*, 489 U.S. at 619 (citing *Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987), quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 351 (1985) (Blackmun, J., concurring)).

Mass. 336, 709 N.E.2d 1085 (1999), *cert. denied*, 528 U.S. 1073 (2000); *Cooper v. Gammon*, 943 S.W.2d 699 (Mo. Ct. App. 1997); *Gaines v. State*, 116 Nev. 359, 998 P.2d 166 (2000); *State ex rel. Juv. Dep't v. Orozco*, 129 Or. App. 148, 878 P.2d 432 (1994); *Johnson v. Commonwealth*, 259 Va. 654 (2000), 529 S.E.2d 769, *cert. denied*, 531 U.S. 981 (2000); *Doles v. State*, 994 P.2d 315 (Wyo. 1999).

We agree with those courts that have adopted the totality-of-the-circumstances test when asked to determine whether a DNA collection statute constitutes an unreasonable search and seizure under the Fourth Amendment. Accordingly, in this case, we need not address whether the DNA Act falls within the special-needs exception to the Fourth Amendment.

The question before us is whether a felon's expectation of privacy in the intrusive nature of the DNA test outweighs the State's interest in collecting DNA samples and maintaining a DNA database. As to the felon's expectation of privacy, the United States Supreme Court has recognized that "those who have suffered a lawful conviction" are subject to a "broad range of [restrictions] that might infringe constitutional rights in a free society." *McKune v. Lile*, 536 U.S. 24, 36 (2002). The United States Supreme Court has held that a convicted person has a diminished expectation of privacy in the penal context. *See Hudson v. Palmer*, 468 U.S. 517, 530 (1984). Further, the Court has held that probationers have limited privacy rights under the Fourth Amendment. *See Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987).

Another factor to consider is the intrusion occasioned by the search. The Supreme Court has held that "the intrusion occasioned by a blood test is not significant, since such 'tests are a commonplace in these days of periodic physical examinations and experience with them teaches that the quantity of blood extracted is minimal, and that for most people the procedure involves virtually no risk, trauma, or pain.' " *Skinner*, 489 U.S. at 625 (quoting *Schmerber*, 384 U.S. at 771). Moreover, the Court has stated "that blood tests do not constitute an unduly extensive imposition on an individual's privacy and bodily integrity." *Winston v. Lee*, 470 U.S. 753, 762 (1985). We agree with the State's contention that because the privacy rights of felons are diminished by virtue of their conviction and the intrusion of the blood test is not significant, the privacy rights implicated by searches under the DNA Act are minimal. However, our analysis does not end there.

We must now determine whether the State's interest in collecting and maintaining DNA samples outweighs the privacy interests of the affected offenders.

The State contends that its interests are substantial, in that the collection of samples under the DNA Act contributes to the State's important interest of a more accurate criminal justice system, as well as its obvious interest in preventing and solving future crimes. In addition, the State contends that this interest would be jeopardized by requiring individualized suspicion prior to collecting a felon's DNA because any matching DNA from a crime scene is most likely in the database because other evidence collected there did not definitively point to any suspect. As a result, the State contends that requiring individualized suspicion would frustrate the State's interests in accurately solving crimes and preventing future offenses.

We believe that the collection and maintenance of DNA samples pursuant to the DNA Act is reasonable in light of the substantial interests of the State and the diminished privacy interests of convicted felons. Polston concedes that the State has a compelling interest in collecting DNA samples from violent offenders and sexual offenders due to the high rates of recidivism of those offenders. However, he states that there is no rational basis for requiring DNA testing of non-violent offenders and non-sexual offenders because the State cannot demonstrate that those offenders will likely commit a violent offense in the future. The State disputes this, citing the testimony of Dr. Paul Ferrara, the Director of the Virginia Division of Forensic Science, who testified recently before the House Judiciary Committee concerning the inclusion of non-violent felons within the scope of the Virginia DNA Act:

> It is tempting to suggest limiting the use of DNA testing to violent crimes and only collect samples from violent felons. That is an approach used in other states. While on the surface this seems like a reasonable strategy, I submit to you that to do so is short-sighted and will dramatically reduce the efficacy of DNA databanks. By analyzing carefully these first 1000 "hits," our research revealed the following:

> Of the 894 case to offender "hits," i.e., where a match between crime scene evidence and a convicted offender occurred, 344 "hits" (38.5%) were to offenders in our database for prior felony property

crime convictions. The crimes assisted/solved by these 344 "hits" included 54 sex offenses, 27 homicides, 6 assaults, 10 robberies, one rape/homicide, 2 abduction/car jackings and 214 burglaries/ B&Es/larcenies.

Another 172 of the 894 case to offender "hits" (19.2%) were to offenders in our database for prior felony drug convictions. The crimes assisted/solved by these 172 "hits" include 35 sex offenses, 42 homicides (including two double homicides), 3 assaults, 18 robberies, 13 abduction/car jackings, and 41 property crimes.

Even 47 "hits" were to offenders in our database for prior felony/forgery/uttering convictions. The crimes assisted/solved by these 47 "hits" include 12 sex offenses, 8 homicides, 4 other violent crimes against persons and 22 B&Es/burglaries/larcenies.

Our database shows similar trends with respect to juveniles. Eighty (80) of the 894 case to offender "hits" were to juveniles in our database. The crimes assisted/solved by these 80 "hits" include 12 sex offenses, 8 homicides, 2 assaults, 7 robberies, one rape/homicide, 3 abduction/car jackings and 41 property crimes.

To summarize, 37% of violent crimes solved or assisted by a DNA databank hit were perpetrated by individuals with only prior property crime convictions as their most serious qualifying offense. Looked at another way, 82% of these case to offender "hits" would have been completely missed if our databank was limited to only violent crimes.

\* \* \*

Further, the State argues that according to a Bureau of Justice Statistics Special Report, *Recidivism of Prisoners Released in 1994,* 21.9% of state prisoners whose most serious offenses were burglaries were rearrested for violent offenses including homicide, kidnapping, rape, other sexual assaults, assault, robbery, and other violence. Further, the report stated that of other prisoners who had previously committed non-violent offenses such as larceny, automobile theft, fraud, drug offenses, and public order offenses were rearrested for violent offenses at the following percentages: larceny (22.3%), automobile theft (26.5%), fraud (14.8%), drug offenses (18.4%), public order offenses (18.5%). The State contends that this data shows that violent recidivism is not confined to violent felons, and, therefore, a need to include them within the scope of

the statute clearly exists. Polston offers no authority to the contrary, and counsel for Polston conceded at oral argument that he had no evidence to rebut the findings presented by the State.

In addition, the State has an interest in deterring and detecting all recidivist acts, not just those considered to be violent. Even assuming the drug offenses at issue here are non-violent offenses, we note that other jurisdictions have indicated that DNA evidence may be used to determine who committed a drug offense. *See, e.g., State v. White*, 850 So. 2d 751, 759 (La. Ct. App. 2003) (presence of defendant's DNA on bag of cocaine sufficient to prove direct physical contact and control of the drug); *Birdsong v. Commonwealth*, 37 Va. App. 603, 609-10, 560 S.E.2d 468, 471-72 (2002) (defendant's DNA used as evidence to convict defendant of possession of cocaine and possession of firearm). The collection and storing of DNA may indeed be useful in helping to solve future drug crimes.

 In further support of collecting DNA samples from non-violent offenders, the State points out that the State Crime Lab stores DNA records for purposes other than those associated with criminal investigations, namely those records related to unidentified persons or body parts, and relatives of missing persons. *See* Ark. Code Ann. § 12-12-1105(b). Polston has failed to demonstrate that in the context of DNA testing, non-violent offenders have greater privacy rights than violent offenders and sexual offenders. We hold that the DNA testing of convicted felons, pursuant to the DNA Act, is reasonable and does not violate the Fourth Amendment.[3]

---

[3] All fifty states have enacted statutes providing for the collection and retention of DNA samples. In addition to Arkansas, the following states include "all felons" in the list of persons required to provide DNA samples: Alabama (Ala. Code §§ 36-18-24 and 36-18-25); Alaska (Alaska Stat. § 44.41.035); Arizona (Ariz. Rev. Stat. § 13-610); Colorado (Colo. Rev. Stat. § 16-11-102.3); Connecticut (Conn. Gen. Stat. § 54-102g); Delaware (Del. Code Ann. tit. 29, § 4713); Florida (Fla. Stat. Ann. § 943.325); Georgia (Ga. Code Ann. § 24-4-60); Illinois (730 Ill. Comp. Stat. Ann. § 5/5-4-3); Kansas (Kan. Stat. Ann. § 21-2511); Louisiana (La. Rev. Stat. Ann. § 15:609); Maryland (Md. Code Ann., Public Safety § 2-504); Massachusetts (Mass. Gen. Laws ch. 22E, § 3); Michigan (Mich. Comp. Laws § 750.520m); Mississippi (Miss. Code Ann. § 47-5-183); Montana (Mont. Code Ann. § 44-6-102); New Mexico (N.M. Stat. Ann. § 29-16-3); North Carolina (N.C. Gen. Stat. § 15A-266.4); Oregon (Or. Rev. Stat. § 137.076); South Dakota (S.D. Codified Laws § 23-5A-1); Tennessee (Tenn. Code Ann. § 40-35-321); Utah (Utah Code Ann. § 53-10-403); Virginia (Va. Code

## Article 2, Section 15

██ Additionally, Polston argues that the DNA testing of non-violent offenders violates article 2, section 15, of the Arkansas Constitution. We have noted that in various search-and-seizure contexts, this court has viewed the protections of article 2, section 15, of the Arkansas Constitution to be parallel to those provided by the Fourth Amendment. *State v. Sullivan*, 348 Ark. 647, 74 S.W.3d 215 (2002). However, we have also noted that in other search-and-seizure contexts, this court has not been in lock-step with federal Fourth Amendment interpretation. *Id.* There are occasions and contexts in which federal Fourth Amendment interpretation provides adequate protections against unreasonable law enforcement conduct; there are also occasions when this court will provide more protection under the Arkansas Constitution than that provided by the federal courts. *Id.* We have stated that one pivotal inquiry in this regard is whether this court has traditionally viewed an issue differently than the federal courts. *Id.*

██ ██ The State contends that this court has followed the United States Supreme Court's interpretation of the Fourth Amendment in the context of parole searches and suspicionless seizures. To support its proposition, the State cites to *Cherry v. State*, 302 Ark. 462, 791 S.W.2d 354 (1990), where this court held that a warrantless search of a parolee's vehicle did not violate the Fourth Amendmen, and *Mullinax v. State*, 327 Ark. 41, 938 S.W.2d 801 (1997), where this court, noting that the language of article 2, section 15, was "virtually identical" to the Fourth Amendment,

---

Ann. § 19.2-310.2); Washington (Wash. Rev. Code Ann. § 43.43.754); Wisconsin (Wis. Stat. § 165.76); Wyoming (Wyo. Stat. Ann. § 7-19-403). Maine does not classify crimes as felonies or misdemeanors. Crimes other than murder are classified as Class A, B, C, D, and E. All persons convicted of murder or a Class A, B, or C crime must provide a DNA sample. *See* Me. Rev. Stat. Ann. tit. 17-A, § 1574. New Jersey requires DNA samples from persons convicted of a "crime." *See* N. J. Stat. Ann. § 53:1-20.20. The remaining states, the District of Columbia, and the federal government require collection of DNA samples from all persons convicted of certain enumerated offenses.

Courts have consistently held that the collection of DNA samples is reasonable and does not violate the Fourth Amendment. Two cases cited by Polston where courts found that the collection of DNA was unconstitutional, *United States v. Miles*, 228 F. Supp.2d 1130 (E.D. Cal. 2002), and *United States v. Kincade*, 345 F.3d 1095 (9th Cir. 2003), *vacated on grant of rehearing en banc*, 354 F.3d 1000 (9th Cir. 2004), are no longer good law. *See United States v. Kincade*, 379 F.3d 813 (9th Cir. 2004).

held that a vehicle roadblock was a reasonable "seizure" under both the Fourth Amendment and article 2, section 15. While the United States Supreme Court has not specifically addressed the issue before us — whether the DNA testing of non-violent offenders is an unreasonable search and seizure under the Fourth Amendment — Polston cites no case suggesting that this court has traditionally viewed the issue of searches or suspicionless seizures in the penal context in a manner inconsistent with the view of the federal courts. We have repeatedly stated that we will not consider an argument, even a constitutional one, when the appellant presents no citation to authority or convincing argument in its support, and it is not apparent without further research that the argument is well taken. *Wooten v. State*, 351 Ark. 241, 91 S.W.3d 63 (2002).

### Privacy

Polston next appears to argue that collecting DNA samples from non-violent offenders interferes with a right of privacy apart from an individual's right to be free from unreasonable searches and seizures. Polston cites *Winston v. Lee*, 470 U.S. 753 (1985), where the United States Supreme Court held that forcing a suspect to undergo major surgery to remove a bullet was a search in violation of the Fourth Amendment, even where the search would produce evidence of a violent crime. We do not believe that the intrusion occasioned by forcing a suspect to undergo major surgery is analogous to the minimal intrusion occasioned by compelling a convicted felon to provide a blood sample for DNA testing. As previously stated, we believe the collection of DNA is reasonable.

Polston next cites *Jegley v. Picado*, 349 Ark. 600, 80 S.W.3d 332 (2002), where this court held that Arkansas's sodomy statute was unconstitutional when applied to consenting adults in their homes. We further explained our holding in *Jegley v. Picado, supra*, in *State v. Brown*, 356 Ark. 460, 156 S.W.3d 722 (2004), where we stated:

> . . . [T]he right to privacy implicit in the Arkansas Constitution is a fundamental right which requires a compelling state interest to override it. This rich tradition of protecting the privacy of our citizens in their homes justified our deviating from federal common law in *Picado* with respect to constitutional protection in our homes.

Indeed, the legal principle that a person's home is a zone of privacy is as sacrosanct as any right or principle under out state constitution and case law. *Jegley v. Picado, supra; Griffin v. State, supra.* Arkansas has clearly embraced a heightened privacy protection for citizens in their homes against unreasonable searches and seizures, as evidenced by our constitution, state statutes, common law, and criminal rules.

*Brown, supra.* We fail to see how our precedents recognizing a citizen's fundamental right to privacy in his or her home offer any support for Polston's argument that he, a convicted felon, has a fundamental right to privacy *implicit* in Arkansas law that would exempt him from the DNA testing at issue in this case.

Affirmed.