The Honorable Bill Sample State Representative 2340 North Highway 7 Hot Springs, AR 71909-9694
Dear Representative Sample:
I am writing in response to your request for an opinion on the following:
Since Mountain Pine does not have code compliance officers, is it legal for our police officers to go on private property and take pictures of junk vehicles if they are in violation of the city's junk car ordinance? If the owner does not move the vehicle, can our police officers then go back on private property to cite the owner for the violation of the ordinance and have them brought to court? If they are not allowed on private property, can they take their pictures from the street to start their case file and then cite the owner if needed?
RESPONSE
In response to your first question, in my opinion, a warrant will generally be required for a Mountain Pine police officer to intrude upon an individual's property to take pictures for the purposes of enforcing the city's junk car ordinance, unless the inspection and photographing occurs from an "open field" or some other area with no reasonable expectation of privacy. In response to your second question, there does not appear to be an impediment to a police officer delivering a citation to an offending individual by approaching the individual's residence, assuming that the offense or citation is predicated on legal grounds. In response to your third question, in my opinion a police officer may legally photograph cars on private property from a public street.
Question One: Is it legal for Mountain Pine police officers to go on private property and take pictures of junk vehicles if they are in violation of the city's junk car ordinance?
Your question appears to be whether police officers who are enforcing a local ordinance may, without a warrant, enter private property to obtain information by inspection and photograph the observations for purpose of enforcing the local ordinance. From the context of your subsequent questions, it appears that you are asking about private residential property. I should note at the outset that every situation will be highly fact specific and only a court considering the particular facts could rule on the legality of specific conduct. While I cannot act as a fact finder or give legal advice to law officers for a particular case, I will set forth the general legal principles that would likely guide a court's analysis of the issues you have raised.
First, while you reference a local ordinance in your request for an opinion, the Arkansas Litter Control Act may have some bearing on your question. Specifically, the Litter Control Act authorizes a law enforcement officer to seize a "junk motor vehicle" from either public or private property. A.C.A. § 8-6-413
(Supp. 2005). A "junk motor vehicle" is defined as:
 [A]ny vehicle which is inoperable, dismantled, or damaged and that is unable to start and move under its own power. Vehicles are excluded as long as they are registered and bear a current license.
A.C.A. § 8-6-403(9) (Repl. 2000). The Litter Control Act specifies that
(b)(1) However, before taking any junk motor vehicle into custody and possession from private property, the enforcement agency shall give the private property owner and the owner of the motor vehicle, if ascertainable, thirty (30) days' notice by registered or certified mail or seventy-two (72) hours' notice by personal service that such an action will be taken unless the motor vehicle is:
(A) Restored to functional use;
(B) Disposed of by the owner in a manner not prohibited by this subchapter; or
(C) Placed in an enclosed building.
A.C.A. § 8-6-413.
Whether the Mountain Pine police officers are acting under the Litter Control Act or local ordinance, similar constitutional issues are likely implicated, namely, the prohibition on warrantless searches found in the United States Constitution, amendment 4, and the Arkansas Constitution art. 2, § 15. The Arkansas Rules of Criminal Procedure define a "search" as:
 any intrusion other than an arrest, by an officer under color of authority, upon an individual's person, property, or privacy, for the purposes of seizing individuals or things or obtaining information by inspection or surveillance, if such intrusion, in the absence of legal authority or sufficient consent, would be a civil wrong, criminal offense, or a violation of the individual's rights under the Constitution of the United States or this state.
Ark. R. Crim. Pro. 10.1(a); see also Norris v. State,338 Ark. 397, 993 S.W.2d 918 (1999), supplemental opinion at 338 Ark. 397,999 S.W.2d 183 (1999) (holding that under Arkansas law a search takes place whenever anything not previously apparent to law enforcement is revealed to the investigating officer); and Op. Att'y Gen. 92-315 (noting that entry onto private property by a constable to investigate alleged animal maltreatment was a search under the Arkansas Rules of Criminal Procedure). It is axiomatic that a police officer in the course of his or her duties is acting under the color of governmental authority.
It is important to note certain activities that are not considered searches. For example, visual surveillance is not considered a search, and thus a police officer is not required to avert his or her eyes when something is seen from a lawful vantage such as a street. Kyllo v. U.S., 533 U.S. 27 (2001) (quoting California v. Ciraolo, 476 U.S. 207 (1986)). Furthermore, the use of photographs to document an observation from a lawful vantage does not transform the observation into a search. See, e.g., Dow Chemical Co. v. U.S., 476 U.S. 227 (1986) (holding that taking aerial photographs of an industrial complex from navigable airspace is not a search under theFourth Amendment); see also U.S. v. McIver, 186 F.3d 1119 (9th Cir. 1999) (upholding video surveillance of a marijuana garden in a National Forest); and Hudspeth v. State, 349 Ark. 315,78 S.W.3d 99 (2002) (holding that the use of "groundhog" camera to monitor areas without a reasonable expectation of privacy did not violate the Fourth Amendment).
Protection against unreasonable searches extends only to areas where someone has demonstrated a subjective expectation of privacy and that expectation of privacy is one that society will reasonably accept. Katz v. U.S., 389 U.S. 347 (1967) (Harlan, J. concurring); see also U.S. v. Corona-Chavez, 328 F.3d 974 (8th Cir. 2003); and Walley v. State, 353 Ark. 586 (2003). Two particular areas on private property do not necessarily possess a reasonable expectation of privacy despite private ownership — driveways or walkways and "open fields."
There is generally no reasonable expectation of privacy in the driveway or walkway of a private home. McDonald v. State,354 Ark. 216, 119 S.W.3d 41 (2003). As explained by the Arkansas Supreme Court, "[n]either a driveway nor a yard are per se private, and, for Fourth Amendment purposes, areas outside the confines of one's home are ordinarily considered public." Walley, supra at 605-06 (citations omitted). These areas, despite traditionally being within the protected curtilage of the home for property law analyses are areas that a normal visitor to the home would use and are not considered to be "private" for the purposes of Fourth Amendment analysis. Id. No trespassing signs alone will not create a reasonable expectation of privacy under aFourth Amendment analysis. Burdyshaw v. State, 69 Ark. App. 243,10 S.W.3d 918 (2000). As discussed in Burdyshaw, without a locked or barred gate, there is an expectation that someone may approach a home by means of the walkway for a lawful purpose, even with a no trespassing sign posted. Id. The courts, in finding noFourth Amendment violation, have addressed factual scenarios where there were no impediments to entry onto the driveway or walkway and the police were otherwise fulfilling a legitimate law enforcement purpose. See, e.g., Miller v. State, 342 Ark. 213, 27 S.W.3d 427
(2000) (holding no Fourth Amendment violation occurred when a police officer proceeded to the back door of a residence when there was no answer at the front door where there was no fence and there was "a little path leading around the house"). The Arkansas Court of Appeals explained that:
 the expectation of privacy in driveways and walkways, which are commonly used by visitors to approach dwellings is not generally considered reasonable. Still, the question of whether a driveway is protected from entry by police officers depends on the circumstances, with reference to such factors as accessibility and visibility from a public highway. The test in each case is that of reasonableness.
Freeman v. State, 37 Ark. App. 81, 824 S.W.2d 403 (1992). The court noted that the driveway in Freeman was in a residential neighborhood, there were no fences or other obstructions and that the area was clearly visible from the street. Id. Furthermore, the police officers observed the vehicle in the driveway while investigating a tip. Id. Under these circumstances, the court of appeals held that there was no Fourth Amendment violation. Id. In a similar vein, the Arkansas Supreme Court has held that there was no Fourth Amendment violation when police officers, having approached a residence to question the owner, recorded the Vehicle Identification Numbers ("VIN") of four-wheelers that were in the driveway. McDonald, supra. The court reasoned that there was no expectation of privacy in the driveway and that the police did not effectuate a Fourth Amendment search when recording the readily visible VINs on the four wheelers situated in the driveway. Id. (citing New York v. Class, 475 U.S. 106 (1986)). While Burdyshaw, supra, clearly establishes that a "No Trespassing" sign alone does not bar entry, there was a valid and lawful purpose for the entry — to speak to the owners and gain consent for a search to investigate a tip. Id. It is unclear whether police officers may enter onto the driveway or walkway solely to inspect and photograph a car in potential violation of the junk car ordinance as described in your request for an opinion. In the absence of clear precedent, however, an Arkansas court might well find no constitutional impediment to such investigative techniques based on the diminished expectation of privacy in those areas as described in Burdyshaw, supra, and the legitimate goals of furthering a law enforcement investigation, such as the investigation of the four-wheelers on private residential property in McDonald, supra.
The "open fields" doctrine applies to private property that is located outside the curtilage of a home. Hester v. U.S.,265 U.S. 57 (1924). There is no reasonable expectation of privacy in "open fields." Oliver v. U.S., 466 U.S. 170 (1984); see also Ingle v. State, 8 Ark. App. 218, 655 S.W.2d 2 (1983). Because there is no reasonable expectation of privacy in an open field, examination of an "open field" for evidence is not a search under theFourth Amendment. See U.S. v. Dunn, 480 U.S. 294 (1987); see also Ark. R. Crim. Pro. 14.2. "Official conduct that does not `compromise any legitimate interest in privacy' is not a search subject to the Fourth Amendment." Illinois v. Caballes, 543 U.S. 405, 408
(2005). In Rainey v. Hartness, 339 Ark. 293, 5 S.W.3d 410 (1999), the Arkansas Supreme Court specifically applied a four factor analysis to determine whether a deer stand was within the curtilage of a home. The four facts are: (1) the proximity of the location searched to the home, (2) whether the area is included within an enclosure surrounding the home, such as a fence, (3) the nature of the uses to which the location is put, and (4) the steps to protect the area from observation by people passing by. Id. See also Standley v. State, 25 Ark. App. 37, 751 S.W.2d 364
(1988) (upholding a warrantless naked-eye surveillance of a marijuana patch within the curtilage of a home by police officers in an adjacent "open field" on the same property).
To the extent that the activity described in your first question does not fall within the exceptions or exemptions listed above, such as those for driveways, walkways, and open fields, and the activity is, rather, a "search," then theFourth Amendment outlines the federal proscriptions on the government's power to execute searches and seizures:
 The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probably cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.
United States Constitution, amend. 4. Additionally, the Arkansas Constitution defines the government's power of search and seizure stating:
 The right of the people of this State to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except on probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the person or thing to be seized.
Ark. Const. Art. 2, § 15.
The Arkansas Supreme Court typically interprets Article 2, § 15 in the same manner as the Fourth Amendment of the United States Constitution. McDonald, supra at fn. 2. The Arkansas Supreme Court has, however, interpreted Art. 2, § 15 to provide greater protections to citizens and more restrictions on police activity than is imposed by federal law in certain circumstances. See, e.g., State v. Brown, 356 Ark. 460, 156 S.W.3d 722 (2004); and McDonald, supra at fn. 2 (noting that the Arkansas Supreme Court had extended greater protections than the minimal federal requirement in Griffin v. State, 347 Ark. 788, 67 S.W.3d 582
(2002) (nighttime search) and State v. Sullivan, 348 Ark. 647,74 S.W.3d 215, (2002) (pretextual arrest)).
If the surveillance is not a search or does not infringe on a reasonable expectation of privacy, there is no Fourth Amendment or Article 2, § 15 prohibition on the action. As noted above, whether there is a reasonable expectation of privacy under the Katz test must be determined on a case-by-case basis. Resolution of such questions must necessarily be determined with reference to the particular facts.
If the activity is a search or performed in such a manner as to make it a search, a warrantless search is presumed unreasonable unless the government can show that the search falls within an exception to the warrant requirement enumerated by the courts. See Stevens v. State, Ark. App., S.W.3d (May 11, 2005). Exceptions vitiating the warrant and probable-cause requirements include, inter alia, exigent circumstances, U.S. v. Banks,540 U.S. 31 (2003), a search incident to arrest, Chimel v. California, 395 U.S. 752 (1969), consent, Schneckloth v. Bustamonte, 412 U.S. 218 (1973), probationer and parolee searches, Samson v. California, U.S. (June 16, 2006), and "special needs" searches, Chandler, supra.
From the information provided in your request for an opinion with respect to Question One and assuming that the activity undertaken is a "search," none of the exceptions to the warrant requirement appear to apply in my opinion. You have not described a situation where exigent circumstances would exist. See, e.g., Op. Att'y Gen. 2001-021. There has been no arrest, obviating the need to determine whether this would be a valid search incident to an arrest. You do not address whether the property owner has given consent for the police officer to enter the property and I will assume that no such consent has been given for the purposes of this opinion. You do specify that this investigation would be done to enforce a city "junk car" ordinance and enforcement of that ordinance does not appear to implicate probationer or parolee searches. The "special needs" doctrine, while including certain administrative and code compliance searches,[1]
does not allow for warrantless searches of a home purely for code compliance reasons. Camara v. Municipal Court, 387 U.S. 523
(1967). Specifically, the Camara court stated:
 We may agree that a routine inspection of the physical condition of private property is a less hostile intrusion than the typical policeman's search for the fruits and instrumentalities of a crime. . . But we cannot agree that the Fourth Amendment interests at stake in these inspection cases are merely `peripheral.'
Id. The "special needs" or administrative search exception applies only to non-law enforcement objectives. See New Jersey v. T.L.O., 469 U.S. 325 (1985). If the ordinance in question is a criminal ordinance creating a misdemeanor within the city, the "special needs" exception for administrative searches would not apply because the search would be for law enforcement purposes; if it is an administrative search, as noted above, Camara, supra, prohibits warrantless searches of private residences for code compliance.
Arkansas Courts also analyze warrantless searches under a totality of the circumstances standard. Polston v. State,360 Ark. 317, S.W.3d (2005) (rejecting a "special needs" analysis in favor of totality-of-the-circumstances analysis to determine whether warrantless DNA testing of sex offenders violated theFourth Amendment). The court will balance the intrusion of the search into the expectation of privacy against the government interest in executing the search. Id. This is a factually specific determination that is properly made by a court of law.
Based on the above, in my opinion, a warrant would likely generally be required for a Mountain Pine police officer to intrude upon an individual's property to take pictures for the purposes of enforcing the city's junk car ordinance, unless the inspection and photographing occurs from an "open field," Standley, supra, or the photographing is incidental to a police officer's approach of the house for some other lawful purpose, by the driveway, walkway, or other area that has no reasonable expectation of privacy, Burdyshaw, supra. This will be a factually specific determination on a case-by-case basis best analyzed by a court.
Question Two: If the owner does not move the vehicle, can our police officers then go back on private property to cite the owner for the violation of the ordinance and have them brought to court?
You do not describe the procedure being used to issue a citation in this situation. Assuming, however, that the citation is being issued by approaching the door of a residence and either handing the citation to the occupant or leaving the citation in the mailbox, it is my opinion that such activity alone would not violate any constitutional provisions.
The Arkansas Rules of Criminal Procedure do not specify a procedure for issuing citations, nor have I have found any cases on point in Arkansas. As noted above, there is generally no reasonable expectation of privacy in a driveway or walkway to the front door of a home despite such locations being within the traditionally protected curtilage of a home. McDonald, supra. I reiterate the discussion in Question One regarding the nature of walkways and driveways for Fourth Amendment purposes. The walkway and driveway of a private residence are not considered private for the purposes of a Fourth Amendment analysis and the Arkansas courts have interpreted Article 2, § 15 in accord with this federal standard.
In my opinion, there is generally no impediment to a police officer approaching a private residence to deliver a citation by means of the walkway or driveway.
Question Three: If they are not allowed on private property, can they take their pictures from the street to start their case file and then cite the owner if needed?
There must be a "constitutionally protected reasonable expectation of privacy" for the protections of theFourth Amendment or Article 2, § 15 to apply. There is no expectation of privacy in what an individual reveals to the public eye. Katz, supra; see also McDonald, supra. The United States Supreme Court has specifically approved warrantless visual surveillance of a home and its curtilage. Ciraolo, supra; see also Kyllo, supra. Simply stated, visual surveillance from a lawful vantage is not considered a search.
The Arkansas Supreme Court has agreed with the holding that "the use of photographic equipment to gather evidence that could lawfully be observed by a law enforcement officer does not violate the Fourth Amendment." Hudspeth, supra. Furthermore, the use of cameras to record surveillance that is done from a lawful vantage has been repeatedly upheld. U.S. v. Jackson,213 F.3d 1269 (10th Cir.) (using video equipment and cameras when the activity being recorded is visible to the naked eye does not ordinarily violate the Fourth Amendment), vacated on other grounds 531 U.S. 1033 (2000); McIver, supra (The use of a mechanical eye to continue surveillance did not make the visual surveillance unconstitutional); Hudspeth, supra (warrantless video recording did not violate the Fourth Amendment because the appellant had no reasonable expectation of privacy in the area surveilled).
In my opinion, a police officer may, generally, lawfully photograph potential junk cars for the purposes of enforcing the Mountain Pine ordinance from a lawful vantage in the street.
Assistant Attorney General Joel DiPippa prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JMD/cyh
[1] If the private property at issue were commercial property of a business that is traditionally subject to regulatory oversight and the nature of the searches were related to that regulatory scheme, a warrantless administrative search could properly fall within the "special needs" exception to the warrant requirements mentioned above. See, e.g., U.S. v. Biswell,406 U.S. 311 (1972) ("We have little difficulty in concluding that where, as here, regulatory inspections further urgent federal interest, and the possibilities of abuse and the threat to privacy are not of impressive dimensions, the inspection may proceed without a warrant where specifically authorized by statute"); New York v. Burger, 482 U.S. 691 (1987) ("closely regulated" businesses have a lessened expectation of privacy, whereas the corresponding governmental interest is heightened, creating potentially reasonable warrantless searches under theFourth Amendment); Op. Att'y Gen. 2002-104; and Op. Att'y Gen.2000-324. An Arkansas court, however, is more likely to analyze whether a warrantless search was reasonable under a factually specific totality-of-the-circumstances standard. See, e.g., Polston v. State, 360 Ark. 317, S.W.3d (2005). In my opinion, a court would likely find such warrantless inspections on public commercial property to be reasonable insofar as the vehicles were on a publicly accessible portion of that property. See, e.g., Op. Att'y Gen. 2002-104 (opining that is permissible to conduct warrantless administrative inspections of vehicles and tanks on public or commercial property). A judicial determination would be necessary, however, to resolve the issue definitively.